IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:24CR245 |
| | ) | Hon. Rossie D. Alston, Jr. |
| PETER MARKUS KUTTKE, | ) | Pretrial Motions Hearing: Jan. 15, 2025 |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS OBTAINED IN
VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS**

Comes now the defendant, Peter Markus Kuttke, through the undersigned counsel, and, pursuant to Federal Rule of Criminal Procedure 12, respectfully requests that this Honorable Court suppress all statements Mr. Kuttke made to law enforcement during the execution of a search warrant on his home on December 1, 2023, because law enforcement obtained these statements from Mr. Kuttke in violation of his Fifth and Fourteenth Amendment rights. In support of this motion, Mr. Kuttke states as follows.

## BACKGROUND

Mr. Kuttke has been charged with a single count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) & (b)(1). Dkt. No. 1. The Court has scheduled trial to begin on January 21, and a pretrial motions hearing for January 15, 2025. Dkt. No. 17. In discovery, the government has disclosed recordings of an interview of Mr. Kuttke made on December 1, 2023, at around 7 a.m. as law enforcement agents executed a search warrant on Mr. Kuttke's home. Mr. Kuttke seeks to suppress the recorded statement, as well as any other statements made to law enforcement during the execution of the search warrant.

**ARGUMENT**

A hearing on this motion will demonstrate that, in this case, Mr. Kuttke was in custody while law enforcement officers interrogated him during the search of his home pursuant to a search warrant on December 1, 2023. The evidence will show that agents never provided Mr. Kuttke with *Miranda* warnings. Because Mr. Kuttke was not free to leave during this non-*Mirandized* interrogation, the Court must suppress Mr. Kuttke's statements.

**I.     Legal Standard**

Before law enforcement agents may interrogate a person who is in custody, the Constitution requires that they inform the suspect of the right to remain silent and other rights set out in *Miranda v. Arizona*, 384 U.S. 436 (1966). *Dickerson v. United States*, 530 U.S. 428, 444 (2000). "A confession made during a custodial interrogation will be suppressed unless police advise the defendant of his rights under *Miranda* . . . and the defendant knowingly, intelligently, and voluntary waives those rights." *United States v. Giddins*, 858 F. 3d 870, 879 (4th Cir. 2017) (quoting *United States v. Holmes*, 670 F.3d 586, 591 (4th Cir. 2012)).

A person is in custody if "under the totality of the circumstances, [his] freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). A court considers many factors in this analysis, to determine the central issue, which is "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Giddins*, 858 F. 3d at 879 (quoting *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013)). "[W]hether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave" is a question courts weigh in view of the totality of the circumstances, including, "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, whether there was any physical contact between the

2

officer and the defendant." *Giddins*, 858 F.3d at 879 (quoting *Hashime*, 734 F.3d at 282-83). "Also pertinent are the suspect's isolation and separation from family, and physical restrictions." *Hashime*, 734 F.3d at 283 (internal citations omitted).

II. **The Court Must Suppress Mr. Kuttke's Statements Because Agents Obtained Them From Him While He Was in Custody and Without Providing Him With *Miranda* Warnings**

In this case, the evidence will show that at least five, armed, law enforcement officers from HSI and NOVA/DC ICAC Task Force, including Special Agent A. Greene of the Department of Homeland Security and Virginia State Police Special Agent D. Cook, knocked on Mr. Kuttke's door in the early morning hours, just before 6:00 a.m., on December 1, 2023, to serve a search warrant.

After a protective pat down of his person, Mr. Kuttke was ordered to sit on the stairs of his apartment while armed law enforcement personnel conducted a sweep to clear the home. While seated on the stairs, Mr. Kuttke waited for officers to produce a search warrant and questioned the reason for the search of his home. Ultimately, Mr. Kuttke was escorted out of his home by Agent Greene and another visibly, heavily armed law enforcement officer. He was taken to a mobile police interrogation room located outside of Mr. Kuttke's home, in the apartment complex parking lot. Mr. Kuttke entered the small, mobile unit with Agent Greene and the armed agent. That law enforcement officer, dressed in tactical gear and armed with a long gun, stayed in the unit until Agent Cook arrived. With its two windows covered, Mr. Kuttke was unaware of what was happening outside the mobile unit. Instead, he remained in the small mobile unit, which contained a table and seating for approximately 3-4 adult males, with at least one agent at all times.

Approximately an hour after being contacted by law enforcement, Mr. Kuttke was interrogated by Agents Greene and Cook. Mr. Kuttke was seated near the door of the police mobile

unit. During this encounter in the police unit, Agent Cook told Mr. Kuttke he was not under arrest and that he was free to leave. In response, Mr. Kuttke, a German national and native German speaker, replied, "I know what you are saying but I don't know what it means." Rather than read Mr. Kuttke the full *Miranda* warnings at this time, Agent Cook simply repeated that Mr. Kuttke was not under arrest and that he was not required to speak with the agents. And, in response to Mr. Kuttke's inquiry about the nature of the accusation, told Mr. Kuttke that they would get to that later. Although Mr. Kuttke was told, at the beginning of the encounter, that he could leave at any time and was seated near the door, he was never left alone in the unit. Ultimately, after background questions, agents began questioning Mr. Kuttke as to the contents of his various computers. During the course of this questioning, Mr. Kuttke advised that he was aware of child sexual abuse material on one of his personal computers and that it was downloaded out of curiosity. After the interrogation, Mr. Kuttke returned to his home. During the encounter and interrogation, agents never advised Mr. Kuttke of his *Miranda* rights.

The law enforcement officers' conduct that early morning would have made any reasonable person feel that they were not free to leave and not free to end questioning despite the officers' statements. Although Mr. Kuttke was cooperative during the interview, a suspect's "tone and demeanor," cooperativeness, or even eagerness to talk with law enforcement are "not dispositive . . . of the custodial inquiry" because "the test for whether an interrogation was custodial is an objective one." *Hashime*, 734 F.3d at 284-85. Likewise, that the agents told Mr. Kuttke that he was not under arrest is not "sufficient to end the inquiry into whether the suspect was 'in custody' during an interrogation." *United States v. Colonna*, 511 F.3d 431 (4th Cir. 2007). Even though the officers told Mr. Kuttke he was free to leave, it does not make the interview non-custodial in these circumstances. *Hashime*, 734 F.3d at 284-85 (finding that agents informing a defendant that

4

he may leave can be overwhelmed by other police conduct or statements) (citing *United States v. Hargrove*, 625 F.3d 170, 180 (4th Cir. 2010)). These circumstances include the large number of armed law-enforcement agents and the suspect's isolation during his interrogation in a separate police mobile interview room, outside his home. *See Hashime*, 734 F.3d at 284. *See also United States v. Colonna*, 511 F.3d 431 (4th Cir. 2007).

In short, the totality of circumstances surrounding the agents' interview of Mr. Kuttke during and after the search objectively establish that it was custodial. Because the agents did not advise Mr. Kuttke of his *Miranda* rights, the Court must suppress Mr. Kuttke's statements.

## CONCLUSION

For the foregoing reasons and such others as may be advanced at a hearing on this motion, or in briefing to follow that hearing, and in light of the entire record, Mr. Kuttke respectfully requests that this Honorable Court enter an order suppressing the statements he made during agents' execution of the search warrant at his home on December 1, 2023.

Respectfully submitted,

**PETER MARKUS KUTTKE**
By Counsel,

_____/s/_____
Brooke Rupert, 79729
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0849
Facsimile: (703) 600-0880
Brooke_Rupert@fd.org
*Counsel for Mr. Kuttke*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of December, 2024, I will file this pleading electronically which will cause an electronic copy to be delivered to the following:

Alessandra Serano, Esq.
Assistant U.S. Attorney

_____/s/_____
Brooke S. Rupert, 79729
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0849
Facsimile: (703) 600-0880
Brooke_Rupert@fd.org
*Counsel for Mr. Kuttke*