IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER MARKUS KUTTKE,<br><br>*Defendant*. | Case No. 1:24-cr-245-RDA |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

The United States of America, by and through undersigned counsel, respectfully opposes the Motion to Suppress Statements (ECF No. 20) filed by defendant Peter Kuttke. The defendant's motion should be denied because he was not detained, much less in custody, during the execution of a federal search warrant at this residence. Moreover, he was told repeatedly that he was not under arrest, was not being detained, and could leave whenever he wanted. Thus, no Fourth Amendment seizure occurred and his statements should not be suppressed.

**FACTUAL BACKGROUND**

The defendant, Peter Markus Kuttke, is a German citizen working as a contractor for the German Armed Forces as an IT worker.

**A. The Investigation**

On June 3, 2023, HSI Taskforce Officer Special Agent Cook used a BitTorrent application to conduct an undercover investigation into the Internet distribution and possession of child pornography. During this investigation, a device sharing suspected child pornography was located on the BitTorrent file sharing network. Special Agent Cook made a direct connection to the device assigned the IP address 69.255.22.1 and downloaded files associated with the torrent infohash:

1

"02c1adeaab13784fc1324d887d959c893be17932." The main file folder located within this torrent was named "new4." The folder contained ten completed individual files at the time of download. The agent reviewed the ten video files that were downloaded from the IP address. The following is a representative sample and description of a few of the video files that were downloaded:

    a.    File Name: Paradisebirds Casey - for Graham Greene 9m39s 12yo_PC.avi

File Description: This video is approximately nine minutes and thirty-nine seconds (9:39) in length and depicts a fully nude minor female subject laying on her back with legs over her head exposing her genitals. There is an unknown individual hitting the minor female victim's buttocks and genitals with what appears to be a leather belt. The image is closely zoomed in on the minor victim's torso and pubic area, exposing her vulva to the camera. The minor victim is biting down on a white piece of fabric as she is being hit. After the beating stops, the minor victim starts performing oral sex on a foreign object. The minor victim then starts rubbing on her breasts and genitals with her hands while the camera zooms in on her genitalia. The minor female in the video has slight hip and breast development with no pubic hair present. Based on these characteristics, the minor female appears to be pubescent.

    b.    File Name:  Little Brunette.avi

File Description: This video is approximately four minutes and forty seconds (4:40) in length and depicts a minor female wearing a black tank top and red pants. The minor female victim removes all her clothes and stands fully nude in front of the camera. The minor victim then sits on a chair exposing her breasts and genitals. The camera is closely zoomed in on the minor victim's pubic area, exposing her vulva to the camera. The minor victim has little breast development and

some pubic hair on her genitals. Based on these characteristics, the minor victim appears to be pubescent in age.

      c.      File Name: Siberian_Mouse_Anna_Bating.avi

File Description: This video is approximately six minutes and thirty-five seconds (6:35) in length and depicts a fully nude minor female victim laying on her back on a couch with her legs wide open exposing her genitals. The camera is closely zoomed in on the minor victim's pubic area, exposing a close-up of her vulva to the camera. The minor victim is rubbing on her genitals with her hands. Based on her small stature, lack of breast development, and lack of pubic hair, the minor female appears to be prepubescent.

    **B.  The Search Warrant**

A federal search warrant was obtained for the location assigned to the IP address, which was Kuttke's apartment. On December 1, 2023, a federal search warrant executed. Kuttke was home alone. Multiple electronic devices were found running sophisticated operating systems such as Linnux.

Approximately six agents knocked on the door to notify Kuttke of the federal search warrant. Decl. of Agent Rich Greene, at ¶ 2 ("Greene Decl.). Kuttke answered the door and was advised of the search warrant. *Id.* He was asked to step outside briefly (approx. 2-3 minutes) so that agents could clear the residence for officer safety. He never sat down on the stairs and was never handcuffed. *Id.* at ¶3. Kuttke wanted to speak with agents and was given an option – agents could speak with him inside the house in front of the other agents doing the search warrant or go downstairs to the mobile police unit with more privacy. *Id.* Kuttke opted to speak with agents downstairs in the mobile unit. Kuttke was permitted to go back inside, get his coat and shoes and came back outside. *Id.*

Contrary to counsel's assertion, Kuttke was not ordered to sit on the stairs, not ordered to go downstairs and never ordered to speak with agents. *Id*. at ¶3   Below is a screen shot from a video of Kuttke walking behind Agent Greene before entering the mobile interview room. *Id.*



Kuttke was interviewed inside the mobile location.  While he was accompanied to the room by a visibly armed agent, that agent left less than a minute later when Agent Cook arrived. *Id.* at ¶5.  It should be noted that the armed agent left the door open as he waited for Agent Cook to arrive. *Id.*

4



Agent Greene was not visibly armed, both Agent Cooke and Agent Greene were wearing street clothes and spoke to Kuttke in a calm voice. *Id.* at ¶3. Kuttke sat down in the booth facing the door initially – see above photo. *Id.* at ¶4. However, when Agent Cooke arrived, he told Kuttke that he wanted him to sit close to the door so he "could walk out at any time he wanted to" and "that they "were not holding you in here". *Id.* at ¶5. Kuttke moved closer to the door on his own.



Kuttke was told he was free to leave and not under arrest on at least three occasions within the first few minutes of the interview. *Id.* In fact, at one point, Agent Cook told Kuttke how the

5

door worked – that he could just push the handle outward and walk out at any time. Kuttke laughed and smiled during this exchange and responded that he "understood what [Agent Cook] was saying" but wanted to know why police were there. Agent Cook stated again that Kuttke did not have to answer questions if he did not want to and could leave at any time. *Id.* at ¶5.

Kuttke opted to speak with agents. His answers were responsive to the questions asked. *Id.* at ¶6. In sum, Kuttke said he was the sole occupant of the apartment since September 2022. He stated he was legally separated from his wife and has 5 kids, all of whom live in Germany. He stated he worked for the German military in the IT field. Kuttke provided his passwords to his computer devices.

He admitted that there was CSAM on one of his devices, the black Lenovo laptop. He said he downloaded and viewed CSAM out of curiosity and did not intend to touch or harm a child. He further admitted to knowing that when he uses a file-sharing program, he knows that whatever he downloads would be made available to share to others.

### C. Forensic Examination of Kuttke's devices

HSI Computer Forensic Examiner (CFE) Ryan McCollum examined Kuttke's devices. The Lenovo Laptop was running a VM which had the majority of the CSAM. In total, Kuttke had thousands of videos and images of CSAM.

The following are a sample of images and videos located on his computer.

1. File Name: 6252898938c16b149d80aca62d728eed   alena buratino girl man masturbation oral petting ra-07 thc vaginal.mkv
   Duration: 24:48
   Description: Prepubescent female orally copulating an adult male penis.
   Source:                                                                   ubuntu-vm-snapshot-29Nov2023.tar\home\ubuntu\Downloads\cpack4_king_size\buratino\6252898938c16b149d80aca62d728eed  alena buratino girl man masturbation oral petting ra-07 thc vaginal.mkv

2. File Name: pthc Pedoland Frifam 2010 Licking Both Jess Maddy (Very Hot).avi.part
   Duration: 8:55

    Description - two prepubescent female girls engaged in oral sex with each other and use of a dildo on each other.
    Source: ubuntu-vm-snapshot-29Nov2023.tar\home\ubuntu\Downloads\1234156\pthc Pedoland Frifam 2010 Licking Both Jess Maddy (Very Hot).avi.part

3. File Name: (KINGPASS) NEW! 022 Asian - pthc ( tied 8yo Cambodian boom-boom girl fucked + raped by sex-tourist ) hussyfan.mpeg.part
Duration: 10:00
Description: Asian girl, bound legs and hands, being penetrated by an adult male.
Source: ubuntu-vm-snapshot-29Nov2023.tar\home\ubuntu\Downloads\1234156\(KINGPASS) NEW! 022 Asian - pthc ( tied 8yo Cambodian boom-boom girl fucked + raped by sex-tourist ) hussyfan.mpeg.part

4. File Name: 0_4_y_o.avi.part
Source: ubuntu-vm-snapshot-29Nov2023.tar\home\ubuntu\Downloads\хоум мейд\кач\другое\0_4_y_o.avi.part

Description: an approx. 6-8 month child strapped in a car seat where an adult male exposes his penis, adult male penis in her face touch her face. Pacifier in mouth.

5. File Name; 22ef9e8851d7eb939a605e07575fcb67_alena buratino cumshot girl man masturbation thc.mkv
Description: prepubescent female, sleeping, with an adult male rubbing penis on child' face.

## PROCEDURAL BACKGROUND

On November 7, 2024, the Defendant was charged by Indictment with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). He was allowed to remain out of custody and on bond. On November 20, 2024, this Court set the jury trial for January 21, 2025.

## ARGUMENT

### I. Legal Framework

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The general rule is that "Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime." *Dunaway v. New York*, 442 U.S. 200, 213 (1979) (internal quotation marks omitted). "A 'seizure' does not occur every time a police officer interacts with a citizen." *United States v. Knights*, 989 F.3d 1281, 1286 (11th Cir. 2021). Rather, "[a] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

Statements "made during a custodial interrogation will be suppressed unless police advise the defendant of [her] rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and the defendant knowingly, intelligently, and voluntary waives those rights." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017) (internal quotation marks omitted). It follows that "[c]oncerns under *Miranda* only arise when a defendant is in custody and subjected to interrogation." *Id.* (emphasis supplied) (citations omitted).

"When deciding whether a defendant not under formal arrest was in custody -- and thus if the *Miranda* requirements apply -- a court asks whether 'under the totality of the circumstances, a suspect's freedom of action was curtailed to a degree associated with formal arrest.' " *Giddins*, 858 F.3d at 879 (quoting *United States v. Hashime*, 734 F.3d 278, 282 (4th Cir. 2013) (internal quotation marks omitted)); *see also United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001). The "operative question" in determining whether a defendant was in custody for *Miranda* purposes "is whether, viewed objectively, 'a reasonable [person] in the suspect's position would have understood [her] situation' to be one of custody." *United States v. Hargrove*, 625 F.3d 170, 178

8

(4th Cir. 2010) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)). We should "examin[e] 'all of the circumstances surrounding the interrogation' and determin[e] 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.' " *Id.* (quoting *Stansbury v. California*, 511 U.S. 318 (1994) (per curiam) (internal quotation marks omitted)). Of course, "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam).

In answering the question of custody, the Fourth Circuit has looked to "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." *Hashime*, 734 F.3d at 283; *see also United States v. Weaver*, 282 F.3d 302, 310 (4th Cir. 2002).

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). The Fourth Circuit has adopted the standard set forth in *United States v. Mendenhall,* 446 U.S. 544 (1980) (plurality op.), asking "whether 'in view of all [of] the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Gray,* 883 F.2d 320, 322 (4th Cir.1989) (quoting *Mendenhall,* 446 U.S. at 554 (plurality op.)). This "reasonable person" standard "is an objective one," thus "its proper application is a question

9

of law." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002) (quoting *United States v. Sullivan,* 138 F.3d 126, 133 (4th Cir.1998)).

A court considers a number of factors in determining whether an officer's conduct would convey to a reasonable person that he is not free to leave. "These include, but are not limited to, the number of police officers present during the encounter, whether they were in uniform or displayed their weapons, whether they touched the defendant, whether they attempted to block his departure or restrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of illegal activity rather than treating the encounter as routine in nature." *United States v. Jones*, 678 F.3d 293, 299–300 (4th Cir. 2012) (internal quotation marks omitted); *see also Weaver*, 282 F.3d at 310 (courts look to factors including "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen"). "Circumstances where the citizen would feel free to go, but stays and has a dialogue with the officer, are considered consensual, and therefore do not implicate the Fourth Amendment." *Weaver*, 282 F.3d at 309.

If the Court finds a violation of the defendant's Fourth Amendment rights, then the Court must consider the related but separate question of whether the exclusionary rule is an appropriate remedy for that violation. *Illinois v. Gates*, 462 U.S. 213, 233 (1983); *United States v. Stephens*, 764 F.3d 327, 335 (4th Cir. 2014). The exclusionary rule encompasses direct evidence and derivative evidence, also known as "fruit of the poisonous tree." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016); *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). Evidence will not be

excluded as "fruit" unless the illegality is at least the "but for" cause of the discovery of the challenged evidence. *Segura v. United States*, 468 U.S. 796, 815 (1984).

The exclusionary rule is a "prudential" doctrine created by the Supreme Court for the sole purpose of deterring future Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236–37 (2011). "Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search." *Id.* at 236 (internal quotation marks and citations omitted). The Supreme Court has repeatedly cautioned that exclusion is a "last resort," which is only appropriate where the deterrence value of suppression outweighs its heavy costs. *Id.* at 237; *see Stephens*, 764 F.3d at 335.

The defendant, as the moving party, bears the burden of demonstrating a basis for his motion to suppress. *United States v. Gualtero*, 62 F. Supp. 3d 479, 482 (E.D. Va. 2014). If the defendant "establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence." *Id.*

## II. The defendant's Motion to Suppress should be denied

The defendant contends that on December 1, 2023, the day of the residential search warrant, he was unlawfully detained and thus his statements, should be suppressed. In reality, the defendant voluntarily went to the mobile office outside of his residence and away from any onlookers where he was repeatedly told he could leave. In fact, he was seated close to the door and told he could walk away at any time. He was advised he was not under arrest on at least three occasions. The conversation was cordial and calm. There were not threats or showing of force made to create a coercive environment. Accordingly, under the Fourth's Circuit's test regarding custody which include "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers,

the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant," the defendant was not detained, so his Motion to Suppress should be denied.

### a. The defendant opted to go to the mobile interview room, at his own request

After the agents knocked on the defendant's door to execute the search warrant, defendant wanted to speak with agents and was given a choice where that interview would take place. Either in the residence while the search warrant was ongoing or down in the mobile interview room. Kuttke voluntarily chose the latter location. Kuttke accompanied Agent Greene to the vehicle walking behind him. Agent Greene was not visibly armed and was dressed in street clothes. The photo clearly shows Kuttke not in handcuffs, being escorted or otherwise touched or forcibly being guided. Nothing with the above encounter indicates defendant was in custody or otherwise detained. In fact, the evidence shows he voluntarily went on his own. Under *Weaver*, 282 F.3d at 309 which stated "[c]ircumstances where the citizen would feel free to go, but stays and has a dialogue with the officer, are considered consensual, and therefore do not implicate the Fourth Amendment," defendant engaged in a consensual interview and not in custody.

### b. The defendant was not detained or in custody

Upon consideration of the factors listed in *United States v. Jones*, 678 F.3d 293, 299–300 (4th Cir. 2012), it is clear the defendant was not detained much less in custody. The defendant went to an interview room outside his residence voluntarily and by his own choice. He was not handcuffed, and he was told numerous times during the first few minutes of the interview he was not under arrest and was free to leave at any time. In fact, the defendant was told he could leave at any time and was seated closest to the door and shown how the door works. But the defendant

wanted to speak with agents and wanted to know more as to why they were there, so he stayed and answered questions about the investigation.  The agents advised Kuttke of the nature of the investigation and asked questions of Kuttke.  The tone of the discussion was relaxed, and the defendant laughed and smiled at certain points.  A reasonable person under the circumstances would have believed he was free to leave.

### i. Agents informed the defendant he was not under arrest, he was not being detained, he was free to leave, and he did not have to answer questions

During the interview, the agents repeatedly informed the defendant that he was not under arrest, he was not being detained, and he was free to leave.  This advisal occurred at least three times during the first part of the interview.  Kuttke acknowledged that he understood these advisals but wanted to know more as to why police were there.  In sum, it was the defendant's own decision that kept him at the interview room, not police coercion.  The defendant's choice to "stay[] and ha[ve] a dialogue with the officer" does not implicate, much less violate, the Fourth Amendment. *Weaver*, 282 F.3d at 309.

### ii. The discussion was low-key and non-threatening, and the defendant was not prevented from leaving the room

There were only two agents present in the interview room at any one time and at one point one agent left leaving just one agent with the defendant.  Furthermore, the agents were not armed and wore plain clothes.  The tone of the discussion was chatty, with the defendant and Agent Cook discussing Germany and its natural beauty, Kuttke's family, his work with the German Army, and computers.  The agents never raised their voices with the defendant and never touched the defendant.  *See Mendenhall*, 446 U.S. at 554 (explaining that "use of language or tone of voice indicating that compliance with the officer's request might be compelled" is relevant to whether reasonable person would have believed he was free to leave).

The agents repeatedly offered for the defendant to leave the interview room whenever he needed to. They never prevented him from leaving the room. The defendant was in fact free to leave, and no reasonable person would have concluded otherwise.

### c. The cases the defendant relies upon are inapposite to the facts of the present case

The defendant lays out the correct legal framework for a detention incident to a search warrant but fails to list binding cases relevant to the facts here. Specifically, defendant fails to mention that it was his choice to be interviewed at the mobile location and had the choice to be interviewed in his residence. While he acknowledges he was told he was free to leave, he does not state how many times he was told that along with the advisal that he did not have to answer questions and could walk about at any time. He was also offered to sit close to the door (which he elected to do) and was even shown how to operate the door. Thus, the cases that the defendant relies upon in his Motion are inapposite to the facts of the present case.

## CONCLUSION

For the reasons stated above, the Court should deny the defendant's motion.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:    /s/
Alessandra P. Serano
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel.: (703) 299-3700
Alessandra.Serano@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2024, I caused a copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

        /s/
Alessandra P. Serano
*Assistant United States Attorney*