IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Case No. 1:24-CR-245 |
| v. | ) ) ) | The Honorable Rossie D. Alston |
| PETER MARKUS KUTTKE | ) ) ) | Sentencing Date: April 9, 2025 |

**UNITED STATES' POSITION ON SENTENCING**

The United States of America, by and through its undersigned counsel, hereby submits its position on the sentencing of Peter Markus Kuttke (hereinafter, "the "defendant"). On November 7, 2024, the defendant pled guilty to an indictment charging him with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). *See* Dkt. Nos. 28 (Plea Hearing Minute Entry), 29 (Plea Agreement). For the reasons that follow, the United States respectfully submits that a sentence of 97 months' incarceration is sufficient, but not greater than necessary, to effectuate the statutory sentencing factors under 18 U.S.C. § 3553(a). The Court should further impose a fifteen-year term of supervised release, forfeiture of the electronic devices used in connection with the offense, and restitution and special assessments as set forth by statute and pursuant to the Plea Agreement.

**I.    Factual Background and Procedure Posture**

Beginning in or about June 2023, agents with Homeland Security Investigations ("HSI") identified the defendant's IP address as one sharing child pornography files via the BitTorrent file-sharing network. Law enforcement identified ten files containing child pornography, which agents downloaded from the defendant's IP address, including a video which depicted a

1

pubescent nude minor female being hit with a belt and rubbing her exposed genitalia, among other sexually explicit conduct.

In December of 2023, HSI agents executed a federal search warrant at the defendant's residence in Reston, Virginia, and interviewed the defendant. The defendant admitted to downloading child pornography, allegedly "out of curiosity." PSR at ¶ 22. Subsequent forensic analysis of the devices seized from the defendant revealed that he was in possession of over 200 videos and 3000 images of child pornography. On November 7, 2024, the defendant pled guilty to one count of receipt of child pornography. Pursuant to the Plea Agreement, the parties agreed that the United States would request a sentence at the low end of the Guidelines and not seek the four-level increase under 2G2.2(b)(4). Dkt. No. 29 ¶ 4. The defendant further agreed to pay any special assessments and restitution imposed by the Court and pursuant to statute. *Id.* ¶¶ 6-7.

## II.     Statutory Penalties and Guidelines Calculations

Although the Sentencing Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Thus, at sentencing, a court "must first calculate the Guidelines range" applicable to the defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also Gall v. United States*, 552 U.S. 38, 49-50 (2007).

### A.     The PSR Calculation

The applicable guidelines range has been calculated in the Presentence Investigation Report ("PSR") as 151-188 months' imprisonment. *See* Dkt. No. 36 (PSR) at ¶ 86. However, pursuant to the Plea Agreement in this case, the government agreed not to seek the enhancement under U.S.S.G. § 2G2.2(b)(4)(A), and has calculated its Guideline recommendation accordingly, as noted below. In accordance with the Plea Agreement, the calculated the total offense level

for the defendant with respect to the Guidelines is as follows:

| Guideline | |
|---|---|
| Base offense level for a violation of 18 U.S.C. § 2252(a)(2) (U.S.S.G. § 2G2.2(a)(2)) | 22 |
| The material involved a prepubescent minor or a minor who had not attained the age of 12 years. (U.S.S.G. § 2G2.2(b)(2)) | +2 |
| The defendant knowingly engaged in distribution. (U.S.S.G. § 2G2.2(b)(3)(F)) | +2 |
| The offense involved the user of a computer or interactive service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material. (U.S.S.G. § 2G2.2(b)(6)) | +2 |
| The offense involved more than 600 images. (U.S.S.G. § 2G2.2(b)(7)(D)) | +5 |
| **TOTAL OFFENSE LEVEL** | 33 |

Dkt. No. 29 ¶4.

The defendant has demonstrated acceptance of responsibility for this offense by pleading guilty and is therefore entitled to a two-level decrease in offense level under U.S.S.G. § 3E1.1(a). PSR at ¶ 49. This two-level decrease is correctly reflected in the PSR. Pursuant to the Plea Agreement, the government will make a motion for the additional one-level decrease in the offense level pursuant to U.S.S.G. § 3E1.1(b). *Id.* at ¶ 50.

The defendant's criminal history score is 0, resulting in a Criminal History Category I. *Id.* at ¶¶ 54, 86. Based on a total offense level of 33 and a Criminal History Category I, and accounting for the defendant's acceptance of responsibility, the Guideline range applicable to the government's recommendation would be 97-121 months.

**III.    Section 3553(a) Factors**

After calculating the Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), and determine a sentence that is

appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. As explained below, consideration of these factors suggests that a sentence of 97 months' is appropriate in this case.

**A. The nature, circumstances, and seriousness of the defendant's offense**

The nature and circumstances of the defendant's offense conduct, which involved use a peer-to-peer network to obtain and view child sexual abuse material, warrant a 97-month sentence of incarceration and a significant term of supervised release. The defendant possessed over 200 videos and over 3000 images of child sexual abuse material. The images collected and viewed by the defendant included depictions of minors being raped and orally sodomized.

Child pornography offenses are extraordinarily serious offenses, and "produce [] concrete and devastating harms for real, identifiable victims." *Paroline v. United States*, 572 U.S. 434, 457 (2014). Such crimes inherently involve the sexual abuse of children, even if no new child pornography is produced. *See New York v. Ferber*, 458 U.S. 747, 759 (1982). Trafficking in child pornography is "intrinsically related to the sexual abuse of children in at least two ways." *Id.* First, increased demand for child pornography is associated with increased supply: Far from being victimless, trafficking in child pornography "harms children in part because it drives production [of child pornography], which involves child abuse." *Paroline*, 572 U.S. at 439-40; *see also Ferber*, 458 U.S. at 759. ("[T]he distribution network for child pornography must be

closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.").

Second, "[i]t is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *Ferber*, 458 U.S. at 759); *accord United States v. Accardi*, 669 F.3d 340, 345 (D.C. Cir. 2012) ("[C]hild pornography creates an indelible record of the children's participation in a traumatizing activity, and the harm to the child is only exacerbated by the circulation of the materials."). "Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note); *accord United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001) (recognizing that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"). These children "must live with the knowledge that adults like [the defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time," and they "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *Sherman*, 268 F.3d at 547-48.

Here, the defendant perpetuated the victimization of real children whose exploitation is memorialized in the graphic depictions of their abuse, which the defendant downloaded and saved. As the victims (and victims' representatives) write in their impact statements, which are attached to the PSR, they continue to suffer deeply by the defendant's actions – collecting such

images and videos and taking a perverse pleasure in the heinous sexual abuse they endured. For these victims, the trauma and pain endure long after the abuse itself stops. These victims continue to suffer devastating consequences from the knowledge that offenders like the defendant consistently view images and videos that depict their sexual abuse. And while the defendant now admits his conduct and accepts responsibility for his actions, the irreparable harm he has caused to the victims of his offenses nevertheless warrants a substantial term of incarceration.

### B. The history and characteristics of the defendant

First and foremost, the Court should be concerned by the nature of the material he possessed, which is the best evidence of his predilections. This material included depictions of the sexual abuse of prepubescent minors. His interest in amassing such abhorrent content demonstrates a lack of empathy and a lack of self-control. This lack of empathy for vulnerable children is particularly disturbing in light of the fact that the defendant himself has 6 children, some of whom are still minors.

Moreover, "[T]he act of viewing child pornography does not necessarily exist in isolation, and the behaviors associated with viewing and possessing child pornography often extend beyond 'just looking at pictures.'" Jessica Owens, et al., *Investigative aspects of crossover offending from a sample of FBI online child sexual abuse cases*, Aggression and Violent Behavior, 30: 3-14 (2016). "Child pornography offending is a valid diagnostic indicator of pedophilia. Child pornography offenders were significantly more likely to show a pedophilic pattern of sexual arousal during phallometric testing than were comparison groups of offenders against adults or general sexology patients. In fact, child pornography offenders, regardless of whether they had a history of sexual offenses against child victims, were more likely to show a

pedophilic pattern of sexual arousal than were a combined group of offenders against children." James M. Cantor and Michael C. Seto, *Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia*, J Abnorm. Psychol., 115(3):610-5 (2006); *see also* U.S.S.C., "2012 Report to Congress: Federal Child Pornography Offenses," ["Report"] Chapter 4, p. 77 ("Sexual interest in children and corresponding sexual gratification are significant motivators for most child pornography offenders.").

The defendant's likelihood of reoffending is directly impacted by his sexual interest in minors. According to *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, Ryan C. W. Hall, M.D. and Richard C.W. Hall, M.D., P.A., Mayo Clin. Proc. (April 2007), "The published rates of recidivism are in the range of 10% to 50% for pedophiles depending on their grouping." A significant term of incarceration combined with appropriate sex offender treatment and followed by a lengthy term of supervision is the most effective way to prevent the defendant from recidivating after his release.

Additionally, the defendant has been employed in the field of information technology since 2004. The defendant also committed these crimes by way of internet-based technology. Due to his employment, a certain level of technical sophistication is attributable to this defendant. Thus, he is well-positioned to become aware of and use additional, more sophisticated means to access exploitative material online. If nothing else, the defendant's past conduct and circumstances warrant careful monitoring in the future.

### C. The need to promote respect for the law and afford adequate deterrence to criminal conduct

The recommended sentence is sufficient but not greater than necessary to deter the defendant and others from engaging in this conduct in the future. Considering the nature of the

defendant's conduct, the government maintains that there is a risk of recidivism associated with this defendant. Though no study or expert can predict whether this defendant will or will not choose to return to exploiting children, the defendant used the internet to access this exploitative content, and thereby also making it available to others within a community of online offenders. Thus, a significant sentence is necessary to deter the defendant from engaging in this harmful conduct after he is released.

### IV.     Supervised Release

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(k), the authorized term of supervised release here is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See, e.g.*, Lifetime Consequences for Sex Offenders Act of 2002, H.R. Rep. No. 107–527 at 2 (2002) ("[S]tudies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes [and that] . . . the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66, at 49–50 (2003) (discussing how amendment to 18 U.S.C. § 3583(k) "responds to the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders . . . whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison"). Additionally, as the defendant has some technological expertise, a lengthy period of supervision is warranted to monitor his online behavior.

V.    **Special Assessments Under the Justice for Victims of Trafficking Act (JVTA) & the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA)**

The Justice for Victims of Trafficking Act (JVTA) imposes a mandatory assessment of $5,000 on any non-indigent defendant convicted of, among other offenses, receipt of child pornography.[1] *See* 18 U.S.C. § 3014. The defendant is not indigent, in fact he has substantial assets that can be used to satisfy his obligations with regard to restitution and the special assessments. PSR at ¶¶ 80-84. Accordingly, the United States respectfully requests that the Court find the defendant non-indigent and impose the mandatory $5,000 special assessment under 18 U.S.C. § 3014.

On December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA). The Act instructs that, in addition to any restitution or other special assessment, courts "shall assess not more than $35,000 on any person convicted of . . . [an] offense for trafficking in child pornography." 18 U.S.C. § 2259A(a)(2). Assessments collected under this statute are deposited in the Child Pornography Victims Reserve, which provides monetary assistance to victims of trafficking in child pornography, *see* 18 U.S.C. §§ 2259(d), 2259B, and shall be paid in full after any special assessment under 18 U.S.C. § 3013 and any restitution to victims of the defendant's offense, *see* 18 U.S.C. § 2259A(d)(2). In determining the amount to be assessed under 18 U.S.C. § 2259A, courts should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and the guidance in 18 U.S.C. § 3572 for the imposition of fines. *See* 18 U.S.C. § 2259A(c). The United States respectfully requests that the

---

[1] The money obtained from this assessment goes to the Domestic Trafficking Victims' Fund, which awards grants and enhances programming for victims of human trafficking and child pornography. The § 3014(a) assessment is payable after the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim compensation. *See* 18 U.S.C. § 3014(b) & (e).

Court impose a reasonable special assessment under 18 U.S.C. § 2259A, in addition to the $100 mandatory special assessment for his felony conviction pursuant to 18 U.S.C. § 3013.

### VI.     Restitution

Pursuant to 18 U.S.C. § 2259, the defendant must pay restitution in the "full amount of the victims' losses as those losses are defined by Section 2259(c)(2)." PSR at ¶ 7. *See also Paroline*, 572 U.S. at 458 ("[A] court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses."). As part of the Plea Agreement, the defendant has agreed that restitution is mandatory under § 2259 and that the Court must enter restitution in an amount not less than $3,000 per victim. PSR at ¶ 7. The defendant further agreed to pay restitution to all victims of any and all conduct described in either the Indictment, the statement of facts, or for any related or similar conduct. *Id.*, Dkt. No 29 at ¶ 8. At this time, the government has received 6 restitution requests, with supporting documentation, as set forth in the probation report and the accompanying attachments. PSR at ¶ 31. These requests have also been provided to defense counsel. "Courts calculating restitution amounts are entitled to rely on any evidence "bearing 'sufficient indicia of reliability to support its probable accuracy." *United States v. Williams*, 319 F. Supp. 3d 812, 816 (E.D. Va. 2018), *aff'd,* 783 F. App'x 269 (4th Cir. 2019), *citing to* United States v. Baston, 818 F.3d 651, 665 (11th Cir. 2016). In possessing their images, the defendant has still individually participated in the harm to each victim, notwithstanding the fact that there are many such defendants. The government asks that the Court enter a restitution order for each victim at sentencing.

### VII.     Forfeiture

Pursuant to the Plea Agreement, the defendant agreed to forfeit any property used or

involved in the offense. Dkt. No. 29 ¶ 9. The United States respectfully requests that the Court order such forfeiture as part of the judgment.

### VIII. Conclusion

For the reasons stated above, the United States respectfully requests that the Court impose a sentence of 97 months' imprisonment, followed by a fifteen-year term of supervised release, a $100 special assessment pursuant to 18 U.S.C. § 3013, a $5,000 special assessment pursuant to 18 U.S.C. § 3014, a reasonable special assessment under 18 U.S.C. § 2259A, forfeiture, and restitution as set forth in the PSR.

Respectfully Submitted,

ERIK S. SIEBERT

United States Attorney

By:  /s/
Nadia C. Prinz
Special Assistant United States Attorney (LT)
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (202) 774-7562
Fax: (703) 299-3980
Email: Nadia.Prinz2@usdoj.gov