IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | |
| v.                          ) | Case No. 1:24-cr-245-RDA |
| ) | |
| PETER MARKUS KUTTKE,        ) | |
|     Defendant    ) | |

**DEFENDANT RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO REIMBURSE DEFENDANT'S FEDERAL PUBLIC DEFENDER**

COMES NOW the Defendant Peter Markus Kuttke, by and through counsel and files this response to the government's Motion to Reimburse his Federal Public Defender. ECF 34. For the reasons set forth herein, Mr. Kuttke requests that the Court deny the Government's motion to order the repayment of court-appointed counsel's fees and costs.

**RELEVANT BACKGROUND**

On November 11, 2024, an Indictment was filed against Mr. Kuttke alleging one count of receipt of child pornography in violation of 18 U.S.C. 2252(a)(2) & (b)(1). On November 14, 2024, Mr. Kuttke had his initial appearance in this Court, the Honorable Lindsey R. Vaala presiding. Mr. Kuttke appeared without counsel but the Duty Assistant Federal Public Defender ("AFPD"), Whitney Minter, was present. At the initial appearance, Mr. Kuttke requested appointment of counsel, and the Duty AFPD aided Mr. Kuttke in filling out his financial affidavit, which was filed under

seal.[1] In open Court, the Duty AFPD, on behalf of Mr. Kuttke, represented the following: (1) Mr. Kuttke had a reasonably significant amount of income (2) Mr. Kuttke had complicated expenses (3) Mr. Kuttke anticipated a significant expense given an outstanding judgment for child support (4) Mr. Kuttke jointly owned a home in Germany (5) the information provided by Mr. Kuttke to fill out the financial affidavit was presented in Euros, quickly converted to dollars by the duty AFPD, and the sums represented relatively rough approximations, susceptible to fluctuation. After brief argument regarding whether reimbursement of counsel fees would ever be appropriate, absent fraudulent misrepresentation by Mr. Kuttke, the Court appointed counsel to represent Mr. Kuttke, noting that "based on the numbers that I'm seeing here, I think that between the salary that he does make but also the debts, that court-appointed counsel is appropriate in this case…." *See* Audio of Initial Appearance, attached hereto as Exhibit A.

## ARGUMENT

In its motion the government urges the Court to order reimbursement of the fees of appointed counsel "if new information becomes available." ECF 34 at 5. The government asserts that as a "result of the information contained in the affidavit," Mr. Kuttke had counsel appointed to him, but also that the PSR reveals that Mr. Kuttke has "significant assets to pay the cost of his counsel." ECF 34 at 4. These assertions taken together suggest that the Court did not have accurate information

---

[1] Under the circumstances present in this case, Mr. Kuttke does not oppose disclosure of his financial affidavit to the Government.

regarding Mr. Kuttke's finances at the initial appearance. However, the reality is that there is no reason to believe that the existence of the finances referenced by the government is new information to the Court.

As such, this situation stands in stark contrast to many of the cases relied upon by the government. *See United States v. Birrell*, 470 F.2d 113,114–15 (2d Cir. 1972) (where the government gathered testimony and subpoenaed documents to prove Birrell facially misrepresented his employment status and income); *see United States v. Harris*, 707 F.2d 653,660–61 (2d Cir. 1983) (where the government submitted documents showing household income to challenge the statements on Harris' financial affidavit); *United States v. Binder*, 794 F.2d 1195,1200 (7th Cir. 1986) (where the government presented evidence showing that various statements in Celani's financial affidavit were inaccurate).

The present question, therefore, without misconduct on the part of Mr. Kuttke and thus the need for a consideration of new facts, is whether an "appropriate inquiry" has been conducted by the magistrate. 18 U.S.C. § 3006A. While the Criminal Justice Act does not prescribe standards for conducting the inquiry,[2] review of the determination is conducted for an abuse of discretion. *See United States v. Hartsell*, 127 F.3d 343,349 (4th Cir. 1997); *see also United States v. Hagen*, 468 Fed. Appx. 373,386 (implicitly approving the use of a standard from *United States v. Parker*, 439 F.3d 81 (2d Cir. 2006) (requiring an "appropriate inquiry" and a financial

---

[2] *See United States v. Foster*, 867 F.2d 838,841 (8th Cir. 1989).

eligibility determination that is "not clearly err[oneous]"); *see also United States v. Barcelon*, 833 F.2d 894,897 (10th Cir. 1987) ("'Appropriate inquiry' necessarily varies with the circumstances presented, and no one method or combination of methods is required"). The Second Circuit notes the significance of deferring to financial eligibility determinations by finding that "in the absence of a serious abuse of discretion… findings[3] as to availability of funds, if supported by an adequate inquiry, will not be disturbed on appeal." *United States v. Bracewell*, 569 F.2d 1194,1200 (2d Cir. 1978).

Reasonable minds could differ as to a financial eligibility determination, which is why, even if this Court believes facially that the government's presentation of the facts suggests availability, it should not overturn the lower court's finding absent a serious abuse of discretion or evidence that Mr. Kuttke misrepresented his financial situation to the Magistrate Judge. However, in regards to his financial situation, it is significant to note that the Fourth Circuit has found that the existence of available funds does not indicate a need for repayment, but that the Court must determine that Mr. Kuttke "will not suffer extreme hardship if deprived of the funds." *United States v. Johnson*, 659 F.2d 415, n. 3 (4th Cir. 1981).

Moreover, Mr. Kuttke's financial situation is far less positive than the government portrayed. Of significance is that Mr. Kuttke and his ex-wife are in the process of divorce proceedings and dividing their assets. *See* PSR ¶81. She is "seeking

---

[3] *Bracewell* was concerned with a District Judge's findings, but the same principle of deference applies to the present Magistrate Judge's determination.

half of the value of their home, 90,000 euros and child support," all of which are still being litigated. PSR ¶81. Additionally, he does not have access to his German retirement account while he is in America, which will likely be seized upon him being sentenced. PSR ¶82. Finally, as part of the fine and restitution payments associated with his sentence, Mr. Kuttke will be required to pay a significant sum. He will have at least $18,000 in restitution payments alone. According to the PSR, "any financial resources he has available should be first assessed to pay restitution to the victims." PSR ¶ 84. Considering the substantial financial restrictions he is already facing, to overturn the Court's finding by ordering repayment would be an extreme hardship.

If this Court elects to overturn the magistrate's findings, then, presuming there were no misrepresentations in the financial affidavit, and considering the hardship a full order of repayment would cause Mr. Kuttke, the remedy should be forward looking and applying to future services only, i.e. from the date of the government's motion. The Criminal Justice Act gives courts the authority "make partial payment for the representation on a going-forward basis...." *United States v. Wilson*, 597 F.3d 353,358 (6th Cir. 2010) (quotations omitted). After the appointment of counsel, a court's ability to order future payments – partial or full – is enabled by and restrained by the CJA's language requiring it "as the interests of justice may dictate." 18 U.S.C. § 3006A(c); *see United States v. Moore*, 666 F.3d 313,321 (4th Cir. 2012). To order Mr. Kuttke, after his proceedings have essentially concluded, to repay the full amount, even on a schedule, would be an excessive hardship in light of his divorce, current limited access to foreign assets, fines, and restitution payments.

Perhaps if he had misrepresented his financial status to obtain representation, it would be in the interests of justice to punish and deter such behavior, but there is no evidence that is the case here.

## CONCLUSION

For the reasons set forth above, Mr. Kuttke requests that the Court deny the government's motion to order the repayment of court-appointed counsel's fees and costs to the public, but if the Court does not, then he requests that such payment be limited.

Respectfully submitted,

PETER MARKUS KUTTKE
By Counsel

/s/
Brooke S. Rupert, Va. Bar 79729
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800 (o)
Brooke_Rupert@fd.org