1

```
 1                UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF VIRGINIA
 2                    ALEXANDRIA DIVISION

 3   --------------------------------x
                                      :
 4   UNITED STATES OF AMERICA         : Criminal Action No.:
                                      : 1:24-cr-245
 5                                    :
           v.                         :
 6                                    :
     PETER M. KUTTKE,                 : January 8, 2025
 7                                    :
                      Defendant.      :
 8   --------------------------------x

 9              TRANSCRIPT OF PLEA HEARING
           BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.,
10             UNITED STATES DISTRICT COURT JUDGE

11                 A P P E A R A N C E S

12   FOR THE GOVERNMENT:    ALESSANDRA SERANO, DOJ-USAO
                            2100 Jamieson Avenue
13                          Alexandria, VA 22314

14   FOR THE DEFENDANT:     BROOKE RUPERT, ESQ.
                            Office of the Federal Public Defender
15                          Eastern District of Virginia
                            1650 King Street, Suite 500
16                          Alexandria, VA 22314

17

18

19

20

21   OFFICIAL U.S. COURT REPORTER:   MS. TONIA M. HARRIS, RPR
                                     United States District Court
22                                   401 Courthouse Square
                                     Tenth Floor
23                                   Alexandria, VA 22314

24

25
```

2

1                      **P R O C E E D I N G S**

2   (Court proceedings commenced at 11:02 a.m.)

3

4          THE COURTROOM CLERK:  Criminal No. 2024-245.  United

5   States of America versus Peter Markus Kuttke.

6          Counsel, please note your appearances for the

7   record.

8          MS. SERANO:  Alessandra Serano on behalf of the

9   United States.

10          THE COURT:  Good morning, ma'am.

11          MS. RUPERT:  Good morning, Your Honor.  Brooke

12   Rupert on behalf of Mr. Kuttke, who is present.

13          THE COURT:  Good morning, ma'am.  Good morning, sir.

14   This matter comes on today based upon the Court's information

15   on a change of plea.

16          MS. RUPERT:  That's correct, Your Honor.

17          THE COURT:  All right.

18          THE COURTROOM CLERK:  Please raise your right hand.

19          (Defendant sworn.)

20          THE COURT:  Mr. Kuttke, is that how you pronounce

21   your name, sir?

22          THE DEFENDANT:  No, Peter Marcus Kuttke.

23          THE COURT:  Kuttke.  Mr. Kuttke, before accepting

24   your plea there are certain questions that I need to ask you.

25   If you do not understand these questions, please feel free to

3

```
 1    ask either the Court or your counsel.

 2              What is your full name, sir?

 3              THE DEFENDANT:  Peter Marcus Kuttke.

 4              THE COURT:  What is your date of birth?

 5              THE DEFENDANT:  ███████, 1975.

 6              THE COURT:  How old are you, sir?

 7              THE DEFENDANT:  49.

 8              THE COURT:  What's the highest level of education

 9    you have completed?

10              THE DEFENDANT:  A bachelors degree.

11              THE COURT:  Do you have any problems reading,

12    writing, or understanding the English language?

13              THE DEFENDANT:  No.

14              THE COURT:  I have to ask you this question, sir.

15    With all due respect, are you under the influence of any

16    narcotics or alcohol this morning?

17              THE DEFENDANT:  No, Your Honor.

18              THE COURT:  Are you entirely satisfied with the

19    services of your counsel?

20              THE DEFENDANT:  Can you repeat the question, please?

21              THE COURT:  Are you entirely satisfied with the

22    services of your counsel?

23              THE DEFENDANT:  Yes, I do, Your Honor.

24              THE COURT:  Have you received a copy of the charging

25    documents before being called upon to plea and believe you
```

4

1  understand what the government must prove before you may be

2  found guilty of this offense?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  Do you fully understand the charge

5  against you?

6              THE DEFENDANT:  I did.

7              THE COURT:  Are you the person named in the charging

8  documents?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Have you discussed the charge and its

11 elements with your lawyer and believe you understand, again,

12 what the government must prove before you may be found guilty

13 of this offense?

14             THE DEFENDANT:  Yes, we did.

15             THE COURT:  Have you had enough time to discuss with

16 your lawyer any possible defenses you may have to these

17 charges?

18             THE DEFENDANT:  Yes, we did.

19             THE COURT:  Have you discussed with your lawyer

20 whether you should enter a plea of guilty or not guilty?

21             THE DEFENDANT:  Yes, we did.

22             THE COURT:  After these discussions, did you decide

23 for yourself to enter this plea of guilty?

24             THE DEFENDANT:  Yes, I did.

25             THE COURT:  Are you entering this plea of guilty

5

1    freely and voluntarily?

2            THE DEFENDANT:  Yes, I did.

3            THE COURT:  Are you entering this plea of guilty

4    because you are in fact guilty of the crime charged?

5            THE DEFENDANT:  Yes, it is.

6            THE COURT:  Has your attorney advised you the

7    maximum punishment which the law provides upon conviction of

8    this offense?

9            THE DEFENDANT:  Yes.

10            THE COURT:  It's my understanding, sir, that with

11    regard to the charge that you're facing, 20 years

12    imprisonment, a $250,000 fine, full restitution, including the

13    minimum of $3,000 per victim, a lifetime period of supervised

14    release with a mandatory minimum of five years, forfeiture of

15    assets, and a special assessment pursuant to statute.

16            Do you understand that that's the maximum punishment

17    which the law provides upon conviction of this offense?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Counsel, can you describe for the Court

20    the nature or your interactions with your client regarding his

21    decision to enter this plea of guilty?

22            MS. RUPERT:  Yes, Your Honor.  Mr. Kuttke and I have

23    met several times in person and spoken by phone.  During those

24    meetings, we've discussed the discovery provided by the

25    government, the elements of the offense, possible defenses,

6

```
 1    and chances of success at trial and possible sentences.
 2              THE COURT:  Thank you, ma'am.  You may stand,
 3    Mr. Kuttke.
 4              Do you agree with your counsel's representations
 5    regarding the nature of her interaction with you regarding
 6    your decision to enter this plea of guilty?
 7              THE DEFENDANT:  Yes, I do.
 8              THE COURT:  Do you understand that probation or
 9    supervised release may or may not be granted in this case and
10    ultimately it's up to the Court to decide what the appropriate
11    sentence and disposition is?
12              THE DEFENDANT:  Yes, I do, Your Honor.
13              THE COURT:  Do you understand by entering this plea
14    of guilty you waive certain constitutional rights?  Let me
15    review those with you.
16              Do you understand that you're waiving your right to
17    a trial by jury?
18              THE DEFENDANT:  I do.
19              THE COURT:  Do you understand that you're waiving
20    your right not to speak against yourself?
21              THE DEFENDANT:  I do.
22              THE COURT:  Do you understand that you're waiving
23    your right to confront and cross-examine your accusers?
24              THE DEFENDANT:  Can you repeat the question?
25              THE COURT:  Do you understand that you're waiving
```

7

1   your right to confront and cross-examine your accusers?

2           THE DEFENDANT:  Can I ask the counsel what it means?

3           THE COURT:  Sure.

4           (Counsel and Defendant confers.)

5           THE DEFENDANT:  I do.

6           THE COURT:  All right.  Let me ask the question

7   again, sir.

8           Do you understand that you're waiving your right to

9   confront and cross-examine your accusers?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  In other words, stated another way, you

12  will not be in a position in a trial to challenge the people

13  who are bringing these charges against you?

14          THE DEFENDANT:  I understood.

15          THE COURT:  All right.  Do you understand you're

16  waiving your right to defend yourself, including the ability

17  of the Court to subpoena evidence and witnesses on your

18  behalf?

19          THE DEFENDANT:  Can I ask the --

20          THE COURT:  Yes, sir.  And any time that you want to

21  do that, feel free.

22          (Counsel and Defendant confers.)

23          THE COURT:  Okay.  Let me ask you the question

24  again, sir.

25          Do you understand that you're waiving your right to

8

1  defend yourself, including the ability of the Court to

2  subpoena witnesses and evidence on your behalf?

3          THE DEFENDANT:  Yes, I understand.

4          THE COURT:  Do you also understand, sir, that by

5  entering this plea of guilty, you waive certain appeal rights.

6  Obviously, if the Court were to enter an illegitimate or

7  illegal sentence, you would be entitled to appeal that.  But

8  with regard to the decision to enter this plea of guilty, you

9  cannot appeal that.

10          Do you understand that, sir?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Ms. Rupert, do you have the form?

13          MS. RUPERT:  I do, Your Honor.

14          THE COURT:  Thank you, ma'am.  Sir, your counsel has

15  handed up a form.  It's entitled Notice of Right to Appeal

16  Sentence Under Limited Circumstances, it purports to have your

17  signature thereon, the signature of your attorney, and now the

18  Court is going to sign it.

19          Did you, in fact, read this form, sir?

20          THE DEFENDANT:  I did.

21          THE COURT:  Did you sign it?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And if you had any questions, Ms. Rupert

24  answered any questions you may have with regard to this form?

25          THE DEFENDANT:  We discussed the questions, yes.

9

1          THE COURT:  Did she answer any questions that you

2    may have had?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Very good, sir.

5          I'll direct that the Notice of Right to Appeal

6    Sentence Under Limited Circumstances be made a part of the

7    record in this matter.

8          Sir, the next question is rather technical and I'm

9    sure Ms. Rupert, because of her reputation, has gone over this

10   with you.  But I need to ask you this question too.  And I'll

11   break it down for you if you have any problems understanding

12   it.

13         Do you understand that you could serve an additional

14   period of incarceration above the statutory maximum allowed

15   for the underlying offense if you violate any condition of

16   supervised release that this Court imposes?  Specifically, if

17   the Court finds by a preponderance of the evidence that you

18   violated a condition of supervised release, it may revoke

19   supervised release and impose a term of imprisonment equal to

20   all or part of the supervised release term authorized by

21   statute without credit for time previously served on house

22   release supervision subject to a cap based upon the nature of

23   the underlying offense.

24         It's a lot of technical language and it comes from

25   the Fourth Circuit, but let me break it down for you as best

1  as I can.  By way of example, and again this is not

2  necessarily your situation, but by way of example, if the

3  Court were to sentence you to 15 years in prison, not saying

4  that that's what we're going to do, and you violated the terms

5  of supervised release and you came back -- well, let's state

6  it another way.  Let's suppose the Court sentenced you to five

7  years in prison and you violated the terms of supervised

8  release and you came back, there's a possibility that you

9  could actually serve more time on the supervised release

10  violation than you did on the original sentence.  So

11  theoretically, you could get five years on the sentencing, but

12  maybe ten years on the supervised release violation.

13          Do you understand that, sir?

14          THE DEFENDANT:  I understand.

15          THE COURT:  Very good.

16          Is there anyone connected with your arrest, such as

17  the police or the prosecution or anyone threatened you or

18  forced you to enter this plea of guilty?

19          THE DEFENDANT:  No.

20          THE COURT:  Have any promises been made to you

21  concerning your plea of guilty other than those outlined in

22  the plea agreement?

23          THE DEFENDANT:  No.

24          THE COURT:  All right.  I'll ask the government --

25  you can have a seat, sir.  I'll ask the government to put on a

11

1    prima facie case and, Ms. Serano, I'll ask you to be as

2    discreet as you can.

3            MS. SERANO:  Yes, sir.  As set forth in the

4    statement of facts, which I've handed up to the Court and

5    which the defendant signed on or about between November 4,

6    2023 through at least December 1, 2023, within the Eastern

7    District of Virginia and elsewhere, the defendant did

8    knowingly download visual depictions of minors engaged in

9    sexually explicit conduct using the internet, such as

10   platforms such as BitTorrent, to include the files that are

11   listed on pages 1 and 2 of the statement of facts which

12   describe various videos of minors, individuals under the age

13   of 18, engaged in sexually explicit conduct.

14           The defendant saved those files and other additional

15   -- other child pornography files on his computer.  Those

16   computers are listed in the forfeiture section of the

17   indictment and included in the plea agreement.  In total, the

18   defendant downloaded over 200 videos and over 3,000 images of

19   child pornography.  The defendant knew that both of these --

20   that both the videos and images portrayed a person under the

21   age of 18 and that the minors were engaged in sexually

22   explicit conduct.  There are additional facts that are

23   irrelevant here, but we'll --

24           THE COURT:  Ms. Rupert, do you have any objection to

25   the statement of facts be incorporated by reference by

12

1  Ms. Serano with regard to her presentation of her prima facie

2  case?

3          MS. RUPERT:  No objection, Your Honor.

4          THE COURT:  Very good.  Thank you, Counsel.

5          You may stand, Mr. Kuttke.  Sir, I have two

6  documents before me, one is entitled statement of facts, and

7  one is entitled plea agreement.  They both purport to have

8  your signature thereon, the signature of your attorney, and

9  the signature of the representative of the government.

10         Did you, in fact, sign these documents, sir?

11         THE DEFENDANT:  Yes, I did.

12         THE COURT:  Did you read them before you signed

13  them?

14         THE DEFENDANT:  Yes, I did.

15         THE COURT:  And if you had any questions regarding

16  either of these documents, I am sure Ms. Rupert answered those

17  questions?

18         THE DEFENDANT:  Yes, she did.

19         THE COURT:  I'll direct that the statement of facts

20  and the plea agreement be made a part of the record in this

21  matter.  And based upon the stipulation by counsel for

22  Mr. Kuttke, the statement of facts is incorporated by

23  reference in the government's prima facie case.

24         Do you understand that by entering this plea of

25  guilty, you cannot refuse to testify against others who may be

13

1    implicated in your circumstances?  In other words, you're

2    waiving certain Fifth Amendment rights.  Do you understand

3    that, sir?

4                THE DEFENDANT:  Can I ask, please?

5                (Counsel and Defendant confers.)

6                THE DEFENDANT:  Yes.

7                THE COURT:  Do you understand that, sir?

8                THE DEFENDANT:  I did.

9                THE COURT:  Do you have any questions regarding that

10   circumstance?

11               THE DEFENDANT:  No.

12               THE COURT:  Do you make any claim now that you are

13   not guilty of this offense?

14               THE DEFENDANT:  No.

15               THE COURT:  Do you understand upon your plea of

16   guilty, the Court will consider a presentence report prepared

17   by the probation office, we'll listen to the arguments of your

18   counsel, we'll listen to the arguments for the representative

19   of the government, and ultimately we'll decide what the

20   appropriate disposition is.  But you understand, sir, it's up

21   to the Court to decide what the appropriate disposition is in

22   this case?

23               THE DEFENDANT:  I do.

24               THE COURT:  Sir, are you a citizen of the United

25   States of America?

14

1           THE DEFENDANT:  No, I'm not.

2           THE COURT:  Sir, do you understand that because

3   you're not a citizen of the United States of America, this

4   plea of guilty may result in your deportation, the exclusion

5   from admission to this country, the denial of naturalization

6   under federal law and other adverse immigration consequences.

7   Do you understand that, sir?

8           And do you understand, sir, that Ms. Rupert is your

9   criminal defense attorney and has no obligation professionally

10  to any civil consequences that may arise as a result of this

11  plea?

12          THE DEFENDANT:  I do.

13          THE COURT:  After having discussed the matter with

14  your attorney, do you freely and voluntarily enter this plea

15  of guilty, waive your right to a trial by jury, and request

16  the Court to hear all matters of law and fact?

17          THE DEFENDANT:  I do.

18          THE COURT:  Do you have any questions that you wish

19  to ask the Court before the Court decides to accept your plea

20  of guilty?

21          THE DEFENDANT:  No, thank you.

22          THE COURT:  Do you have any questions or any

23  conversation you want to have with Ms. Rupert before the Court

24  makes its final determination?

25          THE DEFENDANT:  Thank you.

15

1          (Counsel and Defendant confers.)

2          THE DEFENDANT:  No, I don't.

3          THE COURT:  The Court being of the opinion that the

4    plea of guilty and waiver of jury trial is voluntarily and

5    intelligently made with an understanding of the nature of the

6    charges and the consequences of said plea of guilty and

7    waiver, thus accept the plea and waiver and finds the

8    defendant guilty of the charges contained in the indictment.

9          Ms. Rupert and Ms. Serano, have you all looked at a

10   sentencing date?

11         MS. SERANO:  We have not, but we're open after

12   March.

13         THE COURT:  Ms. Rupert, is that good for you, after

14   March?

15         MS. RUPERT:  Yes, Your Honor.  With the exception of

16   April 15th through April 20th I'm not available.

17         THE COURT:  Tax day.

18         MS. RUPERT:  No.

19         THE COURT:  How about April 9th?  That's maybe one

20   day longer than we usually want to go, but it's fine with you,

21   Ms. Rupert?

22         MS. RUPERT:  It is, Your Honor.

23         THE COURT:  All right.  April 9th at 11:00 a.m.

24   April 9 at 11 a.m.

25         Government's position on bond.

16

1           MS. SERANO:  We have no objection if he continues

2    out on bond through sentencing.

3           THE COURT:  I will say, Ms. Serano, this is a very

4    serious case.  And I'll hear from Ms. Rupert with regard to

5    why you think bond is appropriate in this case.

6           MS. RUPERT:  Yes.  Thank you, Your Honor.

7           THE COURT:  You may have a seat, Mr. Kuttke.

8           MS. RUPERT:  Your Honor, first and foremost, I don't

9    think that Mr. Kuttke presents a risk of flight or a danger

10   here.

11          THE COURT:  I agree with you.  He has no criminal

12   record, but suffice it to say that the underlying facts in

13   this case were very, very compelling.  And the fact that this

14   gentleman has engaged in international travel before, and I

15   know we can get his passport surrendered and all of that, but

16   this is probably one of the worst cases I've seen with regard

17   to this kind of behavior.

18          MS. RUPERT:  Your Honor, with all due respect, I

19   would submit that this is a -- I don't want to say standard

20   receipt case.  I recognize that there are a number of files

21   contained here.  There is -- there is no corresponding

22   chatting with underage people.  There's no contact here.  This

23   is a collection of receipt files.  I think that he has no --

24   like the Court said, he has no criminal history.  He has

25   complied with the terms of his pretrial release thus far.  The

17

1    search warrant was executed in December of 2023.  Shortly

2    thereafter he began --

3                THE COURT:  Have you run his guidelines?

4                MS. RUPERT:  Yes, Your Honor.

5                THE COURT:  What do they suggest?

6                MS. RUPERT:  Your Honor, they are consistent with a

7    typical receipt case.  So the guideline range puts him in the

8    9 to 12-year range with some concessions that we've discussed

9    with the government.

10               I would submit, however, and the Court will see this

11   when we file our paper, this is a case in which we will be

12   asking the Court for the mandatory minimum and submitting a

13   number of cases --

14               THE COURT:  Is he working?

15               MS. RUPERT:  Your Honor, he is on administrative

16   leave.  Mr. Kuttke worked for NATO.  He is, as he noted, he's

17   not a United States citizen, he is a German citizen.

18   Ultimately, he will be requesting a treaty transfer from the

19   Bureau of Prisons.  Ultimately, he seeks to return to Germany,

20   not return back to the United States.  That's one of the

21   reasons why we would ask for his continued -- his continued

22   release so he can finalize his matters here, that way once he

23   does -- once he does begin his sentence everything is wrapped

24   up and he'll be --

25               THE COURT:  I'm going to ask you a tough question

18

1    and I'm not expecting you to necessarily know the answer, but

2    I'm hoping that you might be able to provide some insight.

3    What is the relationship between Germany and the United States

4    with regard to people who are convicted in the United States

5    of a crime?  How do they usually handle it?  Is it unusual

6    standard or do you know?

7          MS. RUPERT:  I don't know.  I don't believe it's

8    unusual, but Ms. Serano might be able to --

9          MS. SERANO:  If I can understand the Court's

10   question, the differences in which Germany handles these

11   offenses is much different than the way United State handles

12   these offenses.  But as far as the treatment of foreign

13   citizens in the United States BOP, they are treated the same,

14   they are not entitled to certain educational things, I

15   believe, because of the -- they don't have the citizenship

16   requirement, but they are treated the same if I'm answering --

17         THE COURT:  Yes, you answered the question.  Do you

18   have his passport?  Does the government have his --

19         MS. SERANO:  Pretrial services has his passport.  We

20   turned it in to pretrial services the day he made his first

21   appearance in court.

22         THE COURT:  Based upon -- I know you've been

23   handling the case from the beginning, Ms. Serano.  Has he been

24   compliant with the government's expectations as he's been out

25   on bond?

1          MS. SERANO:  Well, certainly the United States

2   Attorney's Office is not supervising him.  From what I

3   understand from pretrial services, there have been no issues.

4   And he has -- he did not flee between the time of the search

5   warrant to the time of his arrest.  In fact, he

6   self-surrendered.

7          THE COURT:  Okay.  All right.

8          MS. RUPERT:  Your Honor, if I may.

9          THE COURT:  You convinced me, Ms. Rupert.

10          MS. RUPERT:  And I'll provide a copy to the

11   government.  As I suggested, he began treatment shortly after

12   the execution of the warrant.  So it's been about a year that

13   he's been in treatment services.  He's been compliant with

14   treatment.  They've said that he is a good candidate for

15   continued treatment and recommend that his current treatment

16   plan remain in place.  And so, that is another reason why we

17   would seek continued release so Mr. Kuttke can continue the

18   treatment that he's been receiving since early February of

19   this year.

20          THE COURT:  Ms. Serano, if I can ask you to continue

21   follow-up on the status of the passport, making sure that

22   probation has it, because I don't want something to slip

23   through the cracks as we work through this process.

24          MS. SERANO:  I personally dropped it off to pretrial

25   services.  Actually my agent and I, who is here today, dropped

20

1    it off to pretrial services, but I can go down there and

2    verify that they still have the passport.

3           THE COURT:  All right.  Mr. Kuttke, you don't have

4    any duplicate passports, do you?

5           THE DEFENDANT:  No.

6           THE COURT:  How long have you been in this country,

7    sir?

8           THE DEFENDANT:  I entered the first time in November

9    of 2014.

10          THE COURT:  Okay.  And when was the last time you've

11   been out of this country?

12          THE DEFENDANT:  April 2023.

13          THE COURT:  All right, sir.  Ms. Rupert has talked

14   me into allowing you to stay out on bond, but you need to

15   understand that that is an expectation that you're going to

16   adhere to the requirements of probation, your supervised

17   release.  That you're not to leave the country, that you're to

18   comply with the requirements of the probation department, and

19   I will suggest to you that if there are any slip-ups they are

20   going to let me know, and you'll be back before the Court.

21          Do you understand that, sir?

22          THE DEFENDANT:  I understand it.

23          THE COURT:  All right.  The Court will continue the

24   matter out until April the 9th, 2025 at 11:00 a.m. for

25   sentencing.  Anything else from the government?

21

1          MS. SERANO:  For the record, Your Honor, we do

2    expect that the date -- the time of sentencing that Mr. Kuttke

3    would go into custody on that day and not have a

4    self-surrender day.

5          THE COURT:  Do you agree with that, Ms. Rupert?

6          MS. RUPERT:  Your Honor --

7          THE COURT:  You can't have it both ways.  He can

8    either be out now or it might -- get his time credit for what

9    he's going to do up until the time he's sentenced.  So he's

10   likely not to have it both ways.  He's not going to be able to

11   have the benefit of being out pending sentencing and then

12   self-surrender because that's going to put us six, seven,

13   eight months out, and ultimately he's going to have to do his

14   time.

15         MS. RUPERT:  Yes, Your Honor.  I understand the

16   government's request.

17         THE COURT:  All right.  Thank you, ma'am.

18         Anything else?

19         MS. SERANO:  No, sir.

20         THE COURT:  Off the record.

21         (Discussion off the record.)

22

23         **(Proceedings adjourned at 11:22 a.m.)**

24

25

```
 1                    CERTIFICATE OF REPORTER

 2

 3          I, Tonia Harris, an Official Court Reporter for

 4   the Eastern District of Virginia, do hereby certify that I

 5   reported by machine shorthand, in my official capacity, the

 6   proceedings had and testimony adduced upon the Plea hearing

 7   in the case of the UNITED STATES OF AMERICA versus PETER M.

 8   KUTTKE, Criminal Action No.: 1:24-cr-245, in said court on

 9   the 8th day of January, 2025.

10          I further certify that the foregoing 22 pages

11   constitute the official transcript of said proceedings, as

12   taken from my machine shorthand notes, my computer realtime

13   display, together with the backup tape recording of said

14   proceedings to the best of my ability.

15          In witness whereof, I have hereto subscribed my

16   name, this August 8, 2025.

17

18

19

20

21   _____

22   Tonia M. Harris, RPR
     Official Court Reporter

23

24

25

                                                               22
```