1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3    -------------------------------x
                                     :
 4    UNITED STATES OF AMERICA        : Criminal Action No.:
                                     : 1:24-cr-245
 5                                   :
          v.                         :
 6                                   :
      PETER M. KUTTKE,               : April 9, 2025
 7                                   :
                     Defendant.      :
 8    -------------------------------x

 9           TRANSCRIPT OF SENTENCING HEARING
           BEFORE THE HONORABLE ROSSIE D. ALSTON, JR.,
10             UNITED STATES DISTRICT COURT JUDGE

11                   A P P E A R A N C E S

12    FOR THE GOVERNMENT:    JONATHAN KEIM, DOJ, USAO
                             NADIA PRINZ, DOJ, USAO
13                           2100 Jamieson Avenue
                             Alexandria, VA 22314
14    FOR THE DEFENDANT:     BROOKE RUPERT, ESQ.
                             Office of the Federal Public Defender
15                           Eastern District of Virginia
                             1650 King Street, Suite 500
16                           Alexandria, VA 22314

17

18

19

20

21    OFFICIAL U.S. COURT REPORTER:   MS. TONIA M. HARRIS, RPR
                                      United States District Court
22                                    401 Courthouse Square
                                      Tenth Floor
23                                    Alexandria, VA 22314

24

25
```

─────────────────United States v. Kuttke─────────────────

2

1                    **P R O C E E D I N G S**

2    (Court proceedings commenced at 1:21 p.m.)

3

4            THE COURTROOM CLERK:  Criminal No. 2024-245.  United

5    States of America versus Peter Marcus Kuttke.

6            Counsel, please note your appearances for the

7    record.

8            MR. KEIM:  Good afternoon, Your Honor.  Jonathan

9    Keim and Nadia Prinz for the United States.

10           THE COURT:  Good afternoon.

11           Ms. Prinz, I understand that you have laryngitis and

12   you're under the weather a little bit.

13           MS. PRINZ:  Yes, Your Honor.

14           THE COURT:  Well, we appreciate you being here and

15   putting in the effort, but we'll let your cocounsel take the

16   lead today.

17           MS. PRINZ:  Thank you, Your Honor.

18           MS. RUPERT:  Good afternoon, Your Honor.  Brooke

19   Rupert on behalf of Mr. Kuttke, who is present.

20           THE COURT:  Always a pleasure to see you, Ms.

21   Rupert.

22           This matter comes on today for sentencing.  I know

23   that there's some issues associated with the disposition, but

24   are there any objections to the contents of the presentence

25   report?

─────────United States v. Kuttke─────────

3

1          MS. RUPERT:  None from the defense, Your Honor.

2          MR. KEIM:  None from the government, Your Honor.

3          THE COURT:  Very good.  I'll direct that the

4    presentence report be made a part of the record in this

5    matter.

6          Ms. Rupert, the Court is well aware of the various

7    letters of support for your client and is, obviously, taking

8    those into consideration and if you choose to, you can make

9    those a part of the record if you'd like.

10          MS. RUPERT:  Yes, Your Honor.

11          THE COURT:  Any evidence from the government?

12          MR. KEIM:  Not at this time, Your Honor.

13          THE COURT:  Very good.  Ms. Rupert, any evidence?

14          MS. RUPERT:  No evidence, Your Honor.

15          THE COURT:  All right.  Let's deal with the one sort

16    of little issue that we have, and that is the motion to compel

17    reimbursement of attorneys fees and cost for the Federal

18    Public Defender.

19          I've had the opportunity to review the positions in

20    this case.  And let me tell you the Court's perspective and

21    then you can tell me where I might be able to find the

22    appropriate resolution.

23          I do, obviously, have some concerns about the

24    statements that Judge Vaala may have relied on when she

25    decided that it was appropriate for him to have Federal Public

─────────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────────

EASTERN DISTRICT OF VIRGINIA

─────────────────── United States v. Kuttke ───────────────────

4

1    Defender's Office, and as I was made very well aware

2    yesterday, that the Federal Public Defender's Office is

3    suffering, and like many agencies, from some financial

4    circumstances that are dictating the ability to be able to

5    provide the exemplary service that they usually provide.  And

6    so, I am at least concerned about the fact that -- I won't say

7    that there was any fraud, but there was some misappropriation

8    for the responsibility of a defendant who is not indigent

9    actually pay for his representation.

10            Ms. Rupert, my inclination, and again I'll hear from

11   both sides, is because I may be aware of certain information

12   that Judge Vaala was not made aware of, to make the

13   determination of him paying the attorney's fees to the Federal

14   Public Defender's Office to be prospective from the time that

15   he was actually before this Court.  I think that will address

16   a whole lot of things, including the allegation of fraud or

17   perjury, but it is the Court's inclination to impose that

18   obligation prospectively.

19            Is there anything you would like to say with regard

20   to that, Counsel?  Either counsel can take the lead.

21            MR. KEIM:  The government rests on its papers at

22   this point.

23            THE COURT:  Thank you, sir.  Ms. Rupert.

24            MS. RUPERT:  Your Honor, I think my only -- my

25   concern about the Court's proposal is that there wasn't a

United States v. Kuttke

5

1    separate inquiry done by this Court at that time.

2           THE COURT:  The inquiry that the Court was relying

3    on is the information provided in the presentence report

4    suggesting the different assets that he has outstanding.  Most

5    importantly, the ones that are in bank accounts in the United

6    States of America.  One having the amount of $30,000 in it and

7    there were separate other accounts.  And I understand that

8    he's got some issues that he needs to deal with in Germany,

9    and I understand he's got some issues that he needs to deal

10   with as far as the spousal support and child support and the

11   divorce proceeding with regard to his wife.

12          As I thought through this thing, I thought this is

13   probably the most efficient way of handling this and actually

14   not making him subject to any further inquiries, but if you

15   want more information, we can do that.

16          MS. RUPERT:  Your Honor, the financial affidavit was

17   filed under seal so I don't have that.  I do have the notes of

18   the duty attorney who worked that matter and my understanding,

19   based on those notes, was there was a representation, an

20   approximate representation as to what was in a checking and

21   savings account.  Again, I don't know that that number is

22   quite as high as what was contained in the PSR, but I don't

23   think that was based on any malicious intent to deceive the

24   Court.  It was a significant number and it wasn't exactly what

25   was in the PSR.

EASTERN DISTRICT OF VIRGINIA

─────────────── United States v. Kuttke ───────────────

6

1          THE COURT:  The question is, do you want a hearing

2    which may result in a more draconian approach by the Court or

3    are you satisfied with the Court's perspective?

4          MS. RUPERT:  And I understand that question.  And

5    the answer is, No, I don't want a hearing that may result in a

6    more draconian approach.  What I want to convey to the Court

7    is that there was no intentional misrepresentation.  And so,

8    our position would be that -- I don't think our position is

9    that far off.  My position in the paper was that it would be

10   prospective based from the date of the filing of the

11   government's motion.  At which point, that's when they

12   highlighted the fact that there could have been differences

13   between what was conveyed at the initial appearance and what

14   was conveyed during the PSR.

15          Again, the information conveyed to the PSR was done

16   by Mr. Kuttke so it was information that he provided to

17   himself, signed off waivers.  And so, he wasn't trying to

18   deceive anyone there.  I have not -- I don't know -- I don't

19   know how many hours or the difference between the hours from

20   the time of his arraignment versus the time of the filing of

21   the motion.  That was my proposal to the Court.

22          THE COURT:  And just to make sure that the record is

23   clean, do you waive hearing on the issue --

24          MS. RUPERT:  Let me ask Mr. Kuttke to confirm.

25          (Counsel and Defendant confers.)

─────────── Tonia M. Harris OCR-USDC/EDVA 703-646-1438 ───────────

EASTERN DISTRICT OF VIRGINIA

United States v. Kuttke

7

1        MS. RUPERT:  Your Honor, I don't think we have any

2  additional information to provide at a hearing that wasn't

3  provided in the PSR.

4        THE COURT:  Does he waive hearing on the issue?

5        MS. RUPERT:  Yes, Your Honor.

6        THE COURT:  Very good.  I was hoping that he

7  wouldn't overplay his hand.  All right, very good.

8        We're ready to get to the important part of the

9  sentencing disposition.  I'll hear from the government.

10        MR. KEIM:  Briefly, Your Honor.  The defendant is a

11  sophisticated and skilled information technology professional

12  who downloaded hundreds of videos and thousands of images of

13  children being abused.  The government has recommended

14  97 months in our position paper, which is consistent with the

15  plea agreement.

16        Regarding the 3553(a) factors, this is a serious

17  offense and the sentence that the Court imposes today should

18  reflect the severity of this crime and the injury that it does

19  to victims.  The Court has seen the victim impact statements

20  that were included in the PSR and there's no question that

21  this is a crime that hurt the victims, is hurting the victims,

22  and will hurt the victims in the future.

23        One victim whose information was in the PSR said

24  that the sharing of the images of her or him meant that the

25  torture goes on forever.  Those are her words.  And another

─────────United States v. Kuttke─────────

8

1   said that the knowledge of her images being in circulation

2   caused unending grief.  Again, her words.  As a father of six

3   children, including foster children, the defendant should have

4   had more empathy and understanding for the vulnerability of

5   the victims of his crime.

6          The defense paper acknowledges that he did, in fact,

7   download these images that says he continues to be at a loss

8   to understand why he did so, and why he stored the material on

9   his computers.  And the Court should give that argument the

10  weight that it deserves.  With respect to the defendant's

11  criticisms of certain sentencing enhancements, the plea

12  agreement in the case is already accounted for, an adjustment

13  to the guidelines is calculated --

14         THE COURT:  Let me ask you a question on that

15  because I might have misread something.

16         Is the plea agreement where both sides have agreed

17  to 97 months or is that the plea agreement suggesting that the

18  government is -- has a ceiling on what it can ask for?

19         MR. KEIM:  It's the latter, Your Honor.  The

20  government is not requesting the four-point enhancement.

21         THE COURT:  Very good.  I'm just making sure.  And

22  while I have you on your feet, sir.

23         Have you all been able to come to an agreement on

24  the restitution to the various victims that might exist in

25  this case?

United States v. Kuttke

9

1          MR. KEIM:  With respect to all but one of the

2     victims, yes, Your Honor.

3          THE COURT:  And would you propose that we set a

4     sentencing -- another date, not a sentencing date, but another

5     date so we can actually deal with some particularity and

6     specificity on the restitution amount?

7          MR. KEIM:  Court's indulgence.

8          THE COURT:  Yes.

9          (Counsel confers.)

10          MR. KEIM:  Yes, Your Honor, we have a restitution

11     order that we can submit today.  With respect to that one

12     remaining victim, we do not have an agreement yet as to that

13     amount.  If the Court is willing to accept a proposed

14     restitution order, we can send that up to the Court today with

15     a preliminary restitution amount and then supplement with an

16     additional order later once that's finalized.

17          THE COURT:  And that's fine.  What I would propose

18     is we do this, you can submit the order of restitution that

19     you've all agreed on, and then you can go ahead and submit the

20     next one later, and I will hold the one until I get the other.

21          MR. KEIM:  That sounds good.  Thank you, Your Honor.

22          THE COURT:  Very good.

23          MR. KEIM:  Another couple of statutory factors that

24     I think are worth noting here before we rest on our papers, is

25     that the recidivism is an important consideration as it is in

─────────United States v. Kuttke─────────

10

1   every case like this.

2          The deterrent factor is also significant.  A

3   sentence above the mandatory minimum, which is what the

4   defense has requested has a greater deterrent effect because

5   people see the difference between the minimum and the

6   deterrent sentence, and they recognize that the Court is

7   considering the specifics of the case, not simply what the

8   statutory minimum is.

9          It also speaks better to the consequences to the

10  victim and to the community.  And with respect to restitution,

11  the defense had requested under the 2259(a) assessment to be

12  reduced based on the indigency of the defendant.  Your Honor

13  raised the finding of the indigency that they asserted was

14  made at the appointment of counsel moment.  We would request

15  that the Court impose a special assessment recognizing,

16  obviously, that restitution for victims ought to be the

17  priority.  But that said, given that the Court is going to be

18  ruling on issues relating to the financial condition of the

19  defendant, we won't belabor the point.

20         THE COURT:  Just another quick question and then

21  I'll let you take your seat.

22         Ms. Rupert, as she always does, does a very good job

23  talking about the various sentences that have been imposed in

24  like cases.  And I use that term loosely.  And it seems that

25  many of the judges in this district, not this particular

United States v. Kuttke

11

1   judge, but many of the judges has sort of coalesced around a

2   60-month sentence.  That seems where most of the judges seem

3   to fall on these kinds of cases.  And I appreciate your

4   recommendation, but can you provide for the Court a suggestion

5   as to why this particular judge shouldn't sort of coalesce

6   around the 60-month sentence as many judges in this district

7   have done.

8           MR. KEIM:  Certainly, Your Honor.  First of all, the

9   guidelines are -- exist and they do have influence on what

10  judges do and should be sentencing.  They are advisory, which

11  means that they do, in fact, advise.  And even if there are

12  trends in one jurisdiction versus another, the Court is

13  required to consider those and the variants from them in each

14  and every case.  And for those reasons, and many other

15  reasons, the Fourth Circuit has counseled that each case is

16  different and must be considered on its own facts.

17          In this case, we have several specific aggravating

18  factors that push, you know, I think push us towards a

19  guideline range type of sentence, of the sort that the

20  government has recommended, and that is for one thing the

21  defendant's skills and background as an IT professional.  One

22  thing that may not come through completely in the materials

23  that were stipulated is that the defendant in this case had

24  configured a particular virtual machine, which is used

25  typically by a network administrator, system administrators,

────────────United States v. Kuttke────────────

12

1    and others, for information technology purposes as the

2    location where his sexual abuse material was being downloaded

3    and stored.  It was configured in such a way that it could be

4    rolled back which is basically a way of deleting all of the

5    information that exists on it, restoring it to its condition

6    at a particular date and time of his choosing.  Making it very

7    difficult to actually recover forensically the types of

8    material that we recovered.

9          THE COURT:  That's not the traditional way that you

10    could go through a computer forensic evaluation and just hit

11    history and be able to get it.  There's another process that

12    would need to be implemented to actually find the evidence of

13    the misdeeds here.

14          MR. KEIM:  That's correct, Your Honor.  And I think

15    that's important to understand in this particular case,

16    because he was originally detected in approximately June of

17    2023, but forensically the material that was recovered from

18    his computer, all dated from November and December of 2023,

19    and it was not detected from the June time period when he

20    was -- when we initially got on to him.

21          We're not looking to try to recalculate the

22    guidelines or anything like that.  But I think it's important

23    to know that when the defendant has these kinds of skills, it

24    becomes more difficult to track in the future.  And, you know,

25    it's obviously up to Mr. Kuttke whether he intends to reform

United States v. Kuttke

13

1   to seek a new life, but these are factors the Court must

2   consider with respect to the risks that this defendant poses

3   to the community in the future and the possibility of future

4   reoffense.

5           THE COURT:  Thank you, Counsel.  Ms. Rupert.

6           MS. RUPERT:  Thank you, Your Honor.  As the Court

7   knows from our papers, we're submitting that a sentence of

8   60 months is appropriate, given all of the 3553(a) factors,

9   and as the Court knows, we submitted a lengthy position with a

10  number of letters, but I want to focus on three main factors

11  from that position this afternoon.

12          The first is Mr. Kuttke's history and character, and

13  in particular what I hope that that can tell the Court about

14  his potential in the future.

15          Second, the aspect of deterrence, and finally the

16  comparison cases and unwarranted sentencing disparities.  From

17  our position and from the PSR, both of those documents detail

18  Mr. Kuttke's history as a 50-year-old who suffered from

19  childhood victimization.  And had some distant relationships

20  within his household.  Perhaps as a result of these difficult

21  situations, Mr. Kuttke, who, as the Court knows, is a native

22  German citizen, sought out a tight-knit community in his

23  native land.  This was presented to him in the form of the

24  Mormon church.  This was at a time when the church was seeking

25  to make end roads in the community of Dresden, which was in

United States v. Kuttke

14

1    the Eastern Bloc and after the fall of the Berlin Wall.

2            His high school girlfriend was highly involved in

3    the church and she and others in the community urged

4    Mr. Kuttke to join.  He felt like the church provided that

5    community and the fresh start that he was looking for.  He and

6    his girlfriend, turned wife, built a great family.  They had a

7    large family and they also fostered children.  He was educated

8    and sought to help serve his country and joined the civilian

9    corps, which led to a job at NATO where he could serve his

10   country and travel with his family.

11           Several years after arriving in the United States,

12   however, his marriage fell apart, he became disillusioned with

13   the church, and then several of his family members moved back

14   to Germany leaving him lonely at home.  He tried to transfer

15   back to be with his family.  That transfer took longer than he

16   had hoped and never came to fruition.  And shortly thereafter,

17   his biological father passed away.  The Court knows they

18   didn't have a close relationship --

19           THE COURT:  But he was responsible for dealing with

20   the residue of that circumstance.

21           MS. RUPERT:  Yes.  In a very kind of dramatic

22   fashion.  The Court read the papers so you understand.  That

23   experience shook Mr. Kuttke.  And it was during this timeframe

24   that he accessed CSAM via BitTorrent.

25           Let me address one thing that the government

—United States v. Kuttke—

15

 1   mentioned about Mr. Kuttke.  There is no dispute he's an IT

 2   professional.  And that may differentiate him from others that

 3   the Court sees.  I do want to be clear, however, that the

 4   machine that these materials were found on was not configured

 5   for the purposes of accessing this.  That was the setup of his

 6   machine for other work purposes and whatnot.  It comes to be

 7   that those were the capabilities that machine had, but it

 8   wasn't configured for --

 9        THE COURT:  I hear what you're saying that while the

10   machine was actually able to accomplish the objective that the

11   government suggests, that that wasn't really the reason why

12   the machine was configured that way to allow him to engage in

13   distributing or solicitation of child pornography.

14        MS. RUPERT:  Exactly, Your Honor.  Yes.

15        So our papers describe Mr. Kuttke, describe the

16   nature of the offense, but we think that the letters of

17   support, of which the Court has numerous, and Mr. Kuttke's

18   letter reveal his character, these letters detail a person who

19   is generous, kind, and patient, decent, a person who is

20   thoughtful, remorseful, a good friend, a good father, and a

21   good son, and someone who strives to be of service to others,

22   and one who owns up to his faults when they are apparent to

23   him and takes steps to better himself and others.

24        His mother writes that his interests lie in the

25   wellbeing of people around him and in foreign cultures.  He's

─────────────United States v. Kuttke─────────────

16

1  politically interested and stands up for human rights, equal

2  opportunities, and justice, as well as equal opportunities for

3  women.  His son writes, "I know that he is capable of change,

4  he's compassionate, trustworthy and loyal."  He gave readily

5  of his own time, his energy, and money to his children to --

6  in order for them to have productive aspirations in self

7  growth.

8          In describing Mr. Kuttke's involvement in this

9  offense, as a departure from the character that you knew, is a

10  coworker describes Mr. Kuttke as someone who positively

11  influenced many lives through his unwavering commitment to

12  being of service to others.

13          THE COURT:  Help me out, Ms. Rupert, and again I

14  appreciate your position paper and I was looking at the

15  pictures that you submitted, and it was one, I believe, that

16  they were on a camping trip with an RV.  And there was another

17  one where they were sort of in front of some park or something

18  where the whole family was together.  And one would suggest

19  that by looking at those pictures, he was living somewhat of

20  an ideal life.  It was, you know, like a picket fence.  It was

21  all the things that we would hope that people aspire to

22  accomplish in their -- in a familial relationship.  But where

23  did he go off the rails and why did he go off the rails?

24          MS. RUPERT:  Yes, Your Honor.  And I think the

25  analogy that I'll make here is social media.  You know, almost

United States v. Kuttke

17

1    everyone seems to be living an idyllic life if you look at

2    their pictures on Facebook and things like.  One doesn't take

3    pictures of the tough times.  So there are -- there was a lot

4    going on in his life that is not captured in photographs and

5    it is somewhat detailed in our position to the Court and in

6    the evaluation by his treatment provider.  So he spent some

7    time figuring out where did things go off the rails.  What was

8    surrounding me during that timeframe that provided the context

9    for this.  One of it was the dissolution of his marriage, his

10   family going back.  And so I'm not saying that that is --

11           THE COURT:  Most of the time when people have

12   those -- and again, not every time, it's most of the time, but

13   most of the time when people have those kind of challenges in

14   their personal lives, relationships falling apart and the

15   like, they don't drift to child porn.  They drift to alcohol

16   or they drift to substances, they drift to, you know,

17   destructive behavior in the traditional sense, and not child

18   porn.

19           MS. RUPERT:  Right.  And so, how I would describe it

20   is a rabbit hole.  He drifted to the internet, in general.

21   That was the beginning of it.  He was on the internet doing

22   searches, things like that.  And I recognize that even from

23   that there is a link to get to CSAM, right, but that was -- he

24   found solace in social media and chat groups through legal --

25   legal forums.  And then he accessed websites.  And so, here is

——United States v. Kuttke——

18

1  what makes this -- what sets this apart from maybe other

2  instances is that at that point when he realized that his

3  download contained CSAM, that's where it should have ended.

4  It did not.  There was a curiosity there that he outlines in

5  which he talks about in his treatment -- with his treatment

6  provider that there was a morbid curiosity that led him to

7  access more, and that's where we are.

8           That is the crime, that is why we're here today,

9  that is what he will be punished for.  At the time, he kind of

10 disassociated himself from the harm that was causing others.

11 It's not something that he can say that he wasn't ever aware

12 of, it's just at that time that's not what he was thinking

13 about.  He's been made aware through treatment, through these

14 letters, which he has reviewed himself of the victims, and

15 you'll hear from Mr. Kuttke how that information has impacted

16 him.  He himself, his past has also informed the fact how

17 victims of abuse can feel.  But at the time when he was going

18 through so much other things going on in his life, he had

19 disassociated from acknowledging that.  But I will say that

20 that was a short period in his life.  I hope that the Court

21 and I know the Court will consider his life in its entirety

22 what it was before and the potential that he has in the

23 future.

24           The government mentioned deterrence as a reason for

25 their requested sentence, and I would submit that deterrence

United States v. Kuttke

19

1   also provides a reason for our requested sentence, both

2   specific and general.  I hope that it's apparent that

3   Mr. Kuttke has already been deterred that he had been so in

4   2023 after his first interaction with law enforcement.  He

5   sought treatment at that point, he ceased his behavior at that

6   point.  The treatment provider that he obtained in 2023 is the

7   same provider that works with probation.  It's the same

8   provider that provided the letter to the Court to talk about

9   not only their one-time evaluation of him, but also how he has

10  progressed in treatment throughout.

11          He didn't need a single day in jail in order to stop

12  that behavior and then seek treatment.  That's something he

13  did before the criminal -- the formal criminal case was

14  initiated.  That letter -- that treatment provider indicates

15  that he has been in compliance.  They indicate that he was a

16  low risk and that there's a low rate of recidivism,

17  specifically for Mr. Kuttke and others in his position.

18  Ultimately, that letter concludes that Mr. Kuttke would be a

19  good candidate for community containment.

20          Obviously, that is not -- this is not the situation

21  we're in.  That's not possible given the mandatory minimum

22  applicable to this particular charge.  And so, we submit that

23  a sentence of 60 months is appropriate here.  It's not a slap

24  on the wrist, Your Honor.  No additional time would be needed

25  for someone like Mr. Kuttke who has no priors and has no

─────────────United States v. Kuttke─────────────

20

1    previous jail time.  But also consider what the other aspects

2    of punishment that attend this conviction, both specific to

3    Mr. Kuttke and for this general offense.

4             We understand that Mr. Kuttke is a noncitizen, so it

5    is unclear what programming will be available to him in BOP.

6    Ultimately, it is his hope that his -- his sentence will be

7    transferred to Germany through the BOP's treaty transfer

8    program.  But that's not immediate, it's not a given, and it's

9    not automatic.  He will be on supervised release so, to the

10   extent that he remains in this country, which is unlikely,

11   there will be ways to monitor Mr. Kuttke, and if there are

12   violations the Court can sanction for those violations.

13            Finally, we discussed comparison cases in our

14   position paper.  And that was to show that the sentence that

15   we're requesting is not an anomaly.  We had several pages

16   showing that this sentence is not uncommon.  For a noncontact,

17   nonproduction offense the sentence of 60 months under the

18   facts similar to this case is, like I said, not uncommon.

19            We recognize that in the end imposing a sentence is

20   a judgment call, but we submit that the facts of this case

21   support the sentence that we're asking for of 60 months.

22            THE COURT:  Thank you, Counsel.  Mr. Kuttke, you may

23   stand, sir.

24            Is there anything you want to say before the Court

25   imposes sentence in this matter?  Come to the lectern, sir.

United States v. Kuttke

21

 1          THE DEFENDANT:  Okay, Your Honor.  Thank you for

 2  your time and thank you for a statement.

 3          MS. RUPERT:  Your Honor, I'm sorry to interrupt, but

 4  I failed to acknowledge that his friends and family are here

 5  today.

 6          THE COURT:  You can ask them to stand and they can

 7  be acknowledged.

 8              (Mr. Kuttke's family members were acknowledged.)

 9          MS. RUPERT:  And they traveled from Germany to be

10  here, not only to support Mr. Kuttke here today, but also to

11  wind down his affairs in the United States.

12          THE COURT:  And I want to make sure that I

13  understand exactly.  I understand the lady saying that she was

14  his mother and the gentleman to say that he was Mr. Kuttke's

15  son.

16          MS. RUPERT:  That is correct, Your Honor.

17          THE DEFENDANT:  It is my older son.

18          THE COURT:  Very good, sir.  Ma'am, sir, thank you

19  for being here today.  I'm sure Mr. Kuttke appreciates the

20  time and attention that you've given and the support that

21  you're providing to him as he goes through this process.  So

22  thank you for being here.

23          Thank you, Ms. Rupert.

24          THE DEFENDANT:  Your Honor, thank you for your time

25  and for letting me make my statement.

United States v. Kuttke

1       You asked a question what happened that my life went

2  off the rails, and that I turned to child pornography.  And I

3  asked the same question and it was -- or it still is way more

4  complex than I thought.  So you asked about the alcohol and I

5  don't want to be disrespectful so -- and I wished to turn --

6  to have turned to alcohol because it's way less stigmatized

7  and it would probably have numbed my feelings of emptiness.

8       I think my feeling is it has not been about child

9  pornography at all.  It was just a search for something.  And

10  I stick back to my prepared thoughts, which I came up in the

11  most concise way and the most honest way.

12       I hate what I did, I regret my actions.  I regret

13  the harm and pain I caused.  I apologize to the victims, of

14  course, they were coerced, deceived, and traumatized.  They

15  had no choice.

16       I also want to apologize to my children, my family,

17  and my colleagues, my friends.  I harmed everyone.  I scared

18  my loved ones and I made them worry and concerned.  I

19  appreciate the fact that some of them are here today.  Some of

20  my colleagues wanted to come here and show support.  They've

21  known me for many years from a different side not just for my

22  offense.

23       I feel extreme guilty towards my oldest daughter

24  Eva.  I think she wrote also a letter for support.  My offense

25  caused her severe grief and pain with a possible catastrophic

─────United States v. Kuttke─────

23

1  outcome.  Family was able to intervene and averted the worst.

2  I hope I can reconcile with her one day.

3          Through my actions, I became a burden rather than

4  the support I used to be.  It is extremely -- it is extremely

5  humiliating to have let everyone down for such a vile cause.

6  For no reason whatsoever.

7          Looking back two years, I would have never ever

8  imagined that I get associated with CSAM.  It didn't intrigue

9  me.  I was vocal against it.  Quickly, however, I found myself

10  entangled with it on a slippery slope.  It was a strange

11  search for validation for the realness and authenticity of

12  this issue.  I despise the actors in this industry who gain

13  benefit in the worst and most predatory ways.  Within days and

14  weeks I found myself in a multistage process, which eventually

15  led to my offense.

16          I have empathy and compassion for the victims of

17  CSAM.  I'd be a monster if it wasn't the case.  I share parts

18  of their fate.  I know at least a little of what they went

19  through.  I thought I had to come to terms with it, yet it

20  never let me go.

21          My offense makes me embarrassed and shameful,

22  incredibly angry about my foolishness.  It makes me feel

23  disappointed about myself.  My behavior was unacceptable.  I

24  struggle finding the answer as to why I became careless and

25  unconcerned.  I apparently was even accepting the risk of

United States v. Kuttke

24

1   possible harm.  It is atypical of myself.

2           As far as I can tell, I felt entitled by my personal

3   grief at this time and worry at this time.  The presumed

4   anonymity of the internet promised apparent safety.  I became

5   susceptible for harmful information.  I didn't expect it.  I

6   wasn't looking for it.  I never experienced something like

7   this before.  My decisions to follow this slippery slope, were

8   based on curiosity and inquisitiveness, rather than suspicion,

9   logic, and informed consent.  Never it was my intent to

10  actively participate in a horrendous market of consuming CSAM,

11  let alone actively contribute and participate in this market.

12  I underestimated the speed and the intensity of which I became

13  part of this criminal network.

14          I never wanted to be a part of it or play a role in

15  it.  If I knew about the real nature of the toxic content at

16  the time, I would have avoided this terrain at all cost.  I

17  heavily underestimated the impact my actions had on me and my

18  mental health, which was already compromised.  I

19  underestimated the consequences it would have on me and on my

20  loved ones.  I didn't think of the ramifications my actions

21  could possibly have.

22          I despise my gullibility and naivety.  I let my

23  emotional helplessness compromise my ethics and clear

24  thinking.  My curiosity led me into a rabbit hole.  The honey

25  pot of coercion, deception, and lies.  Eventually, I got

────────────── United States v. Kuttke ──────────────

25

1    involved in one of the most heinous and longstanding crimes.

2          I don't see the full picture yet.  Currently, I feel

3    my conduct was an awfully and tragically failed attempt to

4    validate my own past trauma and to find closure with it.  I

5    distanced myself from the harm I created and I justified my

6    actions.  Of course none of this was based on objectivity and

7    logic.

8          No reason whatsoever could justify the pain and

9    trauma a minor fears when they are abused.  Nothing can

10   justify the pain and trauma a son or daughter feels when a

11   loved one and a trusted family member is away from home for

12   years in prison.  So I hurt everyone.  No one deserves that

13   feelings.  My decisions were simply not worth it and I regret

14   them deeply.

15         Lisa Hunt and her team helped me to see the full

16   gravity of my actions and the videos and depictions were more

17   than anonymous characters, that there is real pain and trauma.

18   Far worse than mine.  Therapy helped me to process my feelings

19   and my emotions in a less destructive way.  It helped me also

20   to recognize and accept my own trauma.  I learned how to

21   develop healthier coping mechanisms.

22         I am certainly not a victim in this case and I

23   certainly take responsibility for my pursuit -- to take --

24   take responsibility.  But my pursuit for CSAM is not defining

25   me.  It never did.  CSAM is a terrible phenomena on the

──────────United States v. Kuttke──────────

26

1  internet.

2         I regret what I did, I genuinely do so.  I'd rather

3  lead a structured life of self-determination, like I used to

4  do before.  I'd like to be a support again for my family and

5  friends and colleagues.  I love to work, I love my work.  The

6  harsh and bitter truth is that I feel needed abroad,

7  especially because Europe prepares for an impending war and a

8  looming depression.

9         I could have already been there for more than a year

10  now.  The past one-and-a-half years were extremely hard and

11  excruciating.  I am humbled about my current situation and

12  self-inflicted unproductiveness.  My existence became an

13  incredible waste of time and money.

14         Even though I lost everything, I made a close and

15  conscientious decision not to evade punishment and to wait

16  patiently for a second chance, even though I became a burden.

17  It is my commitment to my children.  The intervention of the

18  German Military and social worker and the chaplain helped me

19  to see a future.  I had honest conversations with my children

20  about my situation.  Nevertheless, it broke my heart to tell

21  them that we might never be able to see each other again.

22         I abhor losing my freedoms and resources for such a

23  rash and vile act.  Today, I would have chosen differently.  I

24  can no longer understand my past decisions.  I threw away my

25  life, literally.  I threw away trash cans full of knowledge,

—————United States v. Kuttke—————

27

1  training, material and memories which didn't fit in two

2  suitcases.  I certainly hope to be able to lead a somewhat

3  normal life again with my family after this horrible encounter

4  with CSAM.

5      Your Honor, I came to your country to enjoy it while

6  working for mine, not to cause trouble.  I worked well for

7  almost ten years.  I certainly didn't plan for coming into

8  contact with CSAM.  I leave this country as a felon.  It was

9  not on my list.  Child abuse is a terrible topic.  It only

10 hurt victims.  I do have a lot of compassion for the minor

11 victims.  They are weakest and the most vulnerable individuals

12 and they need all the protections they can get.

13      My actions were absurd, nonsensical, irrational,

14 immature, and eventually turned criminal.  I justified my

15 actions and distanced myself from the real harm I caused.  I'm

16 truly sorry for my behavior.

17      THE COURT:  All right, sir.

18      Thank you for your comments.  As I was listening to

19 all the words you said, I was running a balance between

20 whether or not you are empathetic to the harm that you caused

21 to the various minors that are victims every single day of

22 this kind of behavior or whether you were focusing on

23 yourself.  And I was trying to find that balance.  There was a

24 lot of I, and my, and me in your statement.  To some extent,

25 it caused the Court some concern, but I think, in some degree,

─────────United States v. Kuttke─────────

1  it might just be your personality.  But the bottom line is

2  that we cannot allow children to be victimized for the rest of

3  their lives by having access to this kind of information.

4         I can almost work my way around this idea of

5  curiosity, but when you went back that seems to take it to

6  another level.  That takes it out of pure curiosity and takes

7  it to the level of being, in my view, pervasive criminal

8  conduct.

9         THE DEFENDANT:  May I say something?

10        THE COURT:  Yes, sir.

11        THE DEFENDANT:  In my experience, it doesn't

12  necessarily work like, you know, YouTube or Netflix.  So my

13  aim or attention was not to see this terrible pictures.  So in

14  the beginning I didn't know what to expect and I didn't see

15  all this terrible stuff which swept me into this cobweb.  I

16  wasn't aware of what I would see --

17        THE COURT:  Why did you go back?

18        THE DEFENDANT:  Because there was a -- I don't know.

19  Because I have more closure, more realness, more, you know,

20  to -- it was not sexually driven.  It was more driven for

21  the real issue.  It's way more complex.  It's also complex

22  with the involvement of the Mormon church with sexual abuse.

23  (Indiscernible) movie also.  It was a complex situation and

24  the need -- the deep need for me to find kind of

25  knowledge also -- an area which didn't exist.

United States v. Kuttke

29

1    THE COURT:  All right, sir.

2    THE DEFENDANT:  Also, I saw on the internet and I

3  made it to my job basically to gain information about

4  something, to question it, to look deeper into stuff also, and

5  I think this was quite an awful --

6    THE COURT:  Suffice it to say that the internet is

7  one of the greatest inventions of our generation and one of

8  the worse inventions of our generation.  All right, sir.

9  Thank you.

10    As there are no objections to the presentence

11  report, the Court will adopt the presentence report.  However,

12  pursuant to the plea agreement between the parties, the Court

13  will not apply the four-level enhancement under

14  2G2.2(b)(4)(A).  Under the sentencing guidelines the base

15  offense level for receipt of child pornography is 22.  The

16  offense level is increased by two levels because the material

17  involved a prepubescent minor or a minor who had not attained

18  the age of 12.

19    The offense level is increased by two levels because

20  the defendant knowingly engaged in the distribution or other

21  distribution described in subdivisions A through E of USSG

22  Section 2G2.2(b)(3)(F).  The offense level is increased by two

23  levels because the offense involved the use of a computer or

24  an interactive computer service for the possession,

25  transmission, receipt and distribution of the material, or for

─────────────── United States v. Kuttke ───────────────

30

1    accessing with intent to view the material pursuant to

2    2G2.2.(b)(6).  The offense level is increased by five levels

3    because his offense involved more than 600 images pursuant to

4    2G2.2(b)(7)(D).

5         The defendant has clearly demonstrated acceptance of

6    responsibility of the offense.  Accordingly, the offense level

7    is decreased by two levels.  The defendant has assisted the

8    authorities in the investigation or prosecution of his own

9    misconduct by timely notifying authorities of its intention to

10   plead guilty.

11        Accordingly, the offense level is decreased by one

12   additional level pursuant to 3E1.1(b).  This brings the

13   defendant's total offense level to 30.  The criminal history

14   score is zero and the criminal history category is Roman

15   Numeral I.  Accordingly, the applicable guideline range for

16   this offense is 97 to 121 months imprisonment.

17        Pursuant to 18 U.S.C. 3553(a), the Court considers

18   the following:  The nature and circumstances of the offense,

19   and the history and characteristics of the offense, the need

20   for the sentence imposed, among other things, reflect the

21   seriousness of the offense and adequately deter criminal

22   conduct.  The kinds of sentences available, the guidelines,

23   policy statements issued by the sentencing commission, the

24   need to avoid unwarranted sentencing disparities among

25   defendants with similar records, found guilty of similar

─────────────── United States v. Kuttke ───────────────

31

1    conduct, and finally the need to provide restitution as to the

2    victim of the offense.  Ultimately, under the *Booker* standard,

3    the sentence must meet a standard of reasonableness.

4          With respect to the nature and circumstances of the

5    offense, the possession of child pornography is an extremely

6    serious offense that causes significant harm to the victims.

7    In a letter to the Court, the defendant himself recognized

8    that it results in, quote, tragedy, destruction, and harm.

9    Yet, despite his full knowledge of the illegality of his

10   conduct and the harm it causes, the defendant chose to inflict

11   harm on children by collecting over 200 videos and over 3,000

12   images of child sex abuse materials.

13         As evidenced by the various victim impact statements

14   that have been submitted to the Court, the defendant's actions

15   has caused significant harm.  As for the history and

16   characteristics of the defendant, the defendant is highly

17   educated, had a stable job, and has five children of his own.

18         The Court also recognizes that the defendant was

19   apparently a victim of sexual assault as a minor, that the

20   offense conducted occurred over the course of one month,

21   rather than years.  And that he has no significant criminal

22   history.  The Court takes note of the letters of support

23   submitted by the defendant's family, friends, and colleagues

24   on his behalf that speak to his character apart from the

25   offense conduct.

─────────────United States v. Kuttke─────────────

32

1          The Court also recognizes that the defendant has

2     admitted to his guilt and has taken responsibility for his

3     actions.  The Court next considers for the need for the

4     sentence imposed to reflect the seriousness of the offense, to

5     promote respect for the law, and to provide just punishment

6     for the offense, to afford adequate deterrence of criminal

7     conduct, to protect the public from further crimes of the

8     defendant, and to provide the defendant with the needed

9     educational, vocational training, medical care, or other

10    correctional treatment in the most effective manner.

11          The nature of the offense on its own is extremely

12    serious.  The defendant collected a vast number of videos and

13    images containing sexual abuse materials over the course of

14    just one month.  The Court must therefore fashion a sentence

15    that will adequately deter the defendant from reoffending and

16    protect children from the harm in the future.

17          As noted earlier, the guideline range in this case

18    is 97 to 120 months in prison.  The Court recognizes the need

19    to avoid unwarranted sentencing disparities.  There are many

20    circumstances where a sentence closer to the mandatory minimum

21    sentence of five years is appropriate and that district judges

22    in the district had at times exercised their discretion and

23    sentencing to vary downwards to a sentence that -- two are

24    close to five years in child pornography cases.

25          In this Court's view, this is not such a case.

─────United States v. Kuttke─────

33

1   Although, the defendant cited several cases presided over by

2   different judges in this district.  The Court notes that the

3   defendant did not cite any cases from this district judge.

4   The Court finds that this case has several similarities with a

5   case that the Court did handle in *United States v. White*,

6   23-cr-26.  In that case, the defendant was also a first time

7   offender and engaged in similar conduct with regard to

8   collecting images and video containing child sexual abuse

9   material.  The guideline range there was also 97 to

10  120 months.  The defendant who had possessed 70 images and 21

11  videos containing child sexual abuse material was sentenced to

12  72 months of imprisonment.

13          The Court will likewise fashion a sentence that

14  reflects the seriousness of the offense here.  With respect to

15  restitution, the defendant's sentence will include court

16  ordered restitution, provide compensation to some extent to

17  the victims of his offense.  Accordingly, in this case the

18  Court imposes a sentence of 78 months imprisonment.  The Court

19  also imposes a ten-year term of supervised release.

20          As to restitution, the Court understands that the

21  government has received restitution requests from six victims

22  of the defendant's conduct.  The Court finds that restitution

23  is mandatory and appropriate, but will set a restitution

24  hearing for Wednesday, June 26, 2025 at 11 a.m., which is

25  within the 90-day period for determining restitution, so that

─────────United States v. Kuttke─────────

34

1    the parties can try to come to an agreement regarding

2    restitution.  Obviously, if you are able to come to an

3    agreement prior to that, we can go ahead and enter the

4    restitution order earlier than that.

5         I would request that the government hand up its one

6    order that it has for several victims and then supplement that

7    at the later date.

8         Upon review of the financial conditions, as

9    reflected in paragraph 8 of the PSR, the Court finds that the

10   defendant is not indigent now as he has approximately $100,000

11   in personal bank accounts that can be used to satisfy any

12   special assessments.

13        The Court will impose the $5,000 special assessment

14   contemplated by 18 U.S.C. Section 304(a), due and payable

15   immediately.  Any remaining balances shall be paid in equal

16   monthly installments of at least $200 to commence within

17   60 days after release from imprisonment until paid in full.

18   Based on the Court's view of the 3553(a) factors, namely the

19   seriousness of the offense and the need to provide adequate

20   deterrence, the Court will also impose a special assessment of

21   $4,000 pursuant to 18 U.S.C. 2259(a) due and payable

22   immediately.  Any remaining balance shall be paid in equal

23   payments of $200 a month to commence within 60 days after

24   release from imprisonment until paid in full.

25        The Court will impose a special assessment of $100

─────────────United States v. Kuttke─────────────

35

1   pursuant to 18 U.S.C. 3013 due and payable immediately.  The

2   defendant's term of supervised release will be subject to the

3   following special conditions as a condition of supervised

4   release.  Upon completion of the defendant's term of

5   imprisonment, the defendant is to be surrendered to a duly

6   authorized immigration official at the Department of Homeland

7   Security, United States Immigration and Customs Enforcement

8   for a deportation review in accordance with the established

9   procedures provided in the Immigration Nationality Act in 8

10  U.S. 1101(o)(1).

11          As a further condition of supervised release, if

12  ordered deported, the defendant shall remain outside the

13  United States of America.  If not paid in full by the time

14  that the defendant is released from custody, any remaining

15  balances on the restitution both shall be paid in equal

16  installments of $200 to commence again within 60 days of

17  release until paid in full.

18          The defendant shall not incur any new credit card

19  charges or open up any additional lines of credit without the

20  approval of the probation officer.  The defendant shall

21  provide the probation officer access to any requested

22  financial information.  The defendant shall apply all monies

23  received from income tax refunds, lottery winnings,

24  inheritance, judgments, and any anticipated or unexpected

25  financial gains to the outstanding court-ordered financial

United States v. Kuttke

36

1  obligation or in a lesser amount to be determined by the Court

2  upon the recommendation of the probation officer.

3       The defendant shall participate in a program

4  approved by the United States Probation Office for mental

5  health treatment to include a psychosexual evaluation, sex

6  offender treatment, and follow the rules and regulations of

7  that program.  The cost of these programs are to be paid by

8  the defendant as directed by the probation officer.  The

9  defendant shall waive all rights of confidentiality regarding

10 sex offender mental health treatment to allow the release of

11 information to the United States Probation Office and

12 authorize communication between the probation officer and the

13 treatment provider.

14      The defendant shall submit to periodic polygraph

15 testing at the discretion of the probation officer to ensure

16 compliance with the requirements of the defendant's

17 supervision and/or treatment program.  Again, the cost of this

18 testing ought to be paid by the defendant as directed by the

19 probation office.

20      Pursuant to the Adam Walsh Child Protection and

21 Safety Act of 2006, the defendant shall register with the

22 State Sex Offender Registration Agency in any state where the

23 defendant resides, works, and attends school according to

24 federal and state law and as directed by the probation

25 officer.  Again, pursuant to the Adam Walsh Child Protection

──────United States v. Kuttke──────

37

1    and Safety Act of 2006, the defendant shall submit his person,

2    property, house, residence, vehicle, papers, computers, as

3    defined in 18 U.S.C. 1030(e)(1), other electronic

4    communication or data storage devices or media or office to a

5    search conducted by the United States Probation Office.

6    Failure to submit may be grounds for the revocation of

7    release.  The defendant must warn any occupants that the

8    premises may be used to searches pursuant to this condition.

9    The probation officer may conduct a search under this

10   condition only when a reasonable suspicion exists that the

11   defendant has violated a condition of supervision and that the

12   area to be searched contains evidence of this violation.

13        The defendant shall not view or possess any visual

14   depiction of any sexually explicit conduct as both terms are

15   defined in 18 U.S.C. Section 2256 involving a juvenile,

16   including photograph, film, video, picture, or computer, or

17   computer-generated images of pictures where they are made or

18   produced by electronic, mechanical or other means.

19        The defendant shall not have any intentional contact

20   with any children under the age of 18 unless accompanied by a

21   reasonable and responsible adult who is aware of the

22   defendant's conviction and supervision status and has been

23   approved in advance by the Court or the probation officer.

24   Intentional contact includes but is not limited to physical

25   contact, verbal communications, written communications, and/or

United States v. Kuttke

38

1   electronic communications such as email.  The defendant is not

2   prohibited from having incidental contact with children under

3   the age of 18 which includes but is not limited to routine

4   interactions in public places such as grocery stores,

5   department stores, restaurants, et cetera.  But under no

6   circumstances should the defendant have any unapproved

7   physical contact with a minor.

8           The defendant shall be prohibited from going to,

9   congregating, or loitering within 100 yards of school yards,

10  playgrounds, child care facilities, or other locations where

11  an adult will have no legitimate interest or business unless

12  accompanying a child.  The defendant is also prohibited from

13  working in such locations.  The defendant must submit his

14  person, property, house, residence, vehicle, papers,

15  computers, and other electronic communications or data storage

16  devices or media or office to a search conducted by the United

17  States Probation Office.  Failure to submit to a search may be

18  grounds for revocation of release.  You must warn any other

19  occupants that the premises may be subject to searches

20  pursuant to this condition.

21          An officer may conduct a search pursuant to this

22  condition only when reasonable suspicion exists that he

23  violated a condition of his supervision and that the areas to

24  be searched contained evidence of his violation.  Any search

25  must be conducted at a reasonable time and in a reasonable

─────United States v. Kuttke─────

1    manner.  The defendant shall disclose to the probation officer

2    all computers as defined in 18 U.S.C. Section 1030(e)(1) and

3    similar devices that provide access to the internet that the

4    defendant owns, possesses, or uses.  The defendant shall not

5    possess or use any computer or similar device which includes

6    use of computers at work, unless the defendant cooperates with

7    the probation office's computer monitoring program or receives

8    permission from the probation office.

9         The defendant shall permit random unannounced

10   inspections of any unmonitored computer or similar device

11   under the defendant's control to ensure compliance.  The

12   defendant shall not use the internet to communicate with any

13   individual or group who promotes sexual abuse of children.

14   The defendant shall not use marijuana or cannabis in any form

15   unless prescribed by a medical doctor.  The defendant shall

16   comply with the requirements of the computer monitoring system

17   as administered by the probation office.

18        The defendant shall allow the probation officer to

19   install computer monitoring software on any computer defined

20   by statute that the defendant uses.  The cost of the

21   monitoring shall be paid by the defendant.  To ensure

22   compliance with the computer monitoring condition, the

23   defendant shall allow the probation officer to conduct initial

24   and periodic unannounced searches of any computers pursuant to

25   statute subject to computer monitoring.  These searches shall

United States v. Kuttke

40

1  be conducted to determine whether the computer contains any

2  prohibited data prior to installation of the monitoring

3  software, whether the monitoring software is functioning

4  effectively after its installation, and whether there have

5  been any attempts to circumvent the monitoring software after

6  its installation.  The defendant shall warn any other people

7  using these computers that the computers may be subject to

8  searches pursuant to this condition.

9        The defendant shall allow the probation officer to

10 install computer monitoring software on any computer the

11 defendant seeks to use.  The defendant shall submit to a

12 search of all computers, as defined by statute or other

13 electronic communications or data storage devices or media.

14 The defendant shall warn any people who use these computers or

15 devices capable of accessing the internet that the devices may

16 be subject to searches pursuant to this condition.

17       A probation officer may conduct a search pursuant to

18 this condition only, again, when reasonable suspicion exists

19 that there is a violation of a condition of supervision and

20 that the computer device contains evidence of this violation.

21 Any search will be conducted at a reasonable time and in a

22 reasonable manner.  To ensure compliance with computer

23 monitoring or supervision conditions, the defendant shall

24 submit any records requested by the probation officer to

25 verify compliance with the defendant's conditions, including

United States v. Kuttke

41

1    but not limited to credit card bills, telephone bills, and

2    cable and satellite television bills.

3            The Court also adopts and imposes each of the

4    mandatory and standard conditions that have been spelled out

5    in the defendant's presentence report on pages 20 to 22 at

6    docket number 111.

7            Counsel, and the defendant, do you understand the

8    conditions to which the Court refers when it refers to the

9    mandatory and standard conditions as written in the PSR?

10           MS. RUPERT:  Yes, Your Honor.  We have a copy of the

11   PSR.

12           THE COURT:  Do you have any objection to the

13   mandatory and standard conditions set forth in the PSR?

14           MS. RUPERT:  No, Your Honor.

15           THE COURT:  Mr. Kuttke, do you agree with your

16   counsel's representations?

17           THE WITNESS:  Yes.

18           THE COURT:  Would you like me to read the mandatory

19   and standard conditions aloud?

20           MS. RUPERT:  No, Your Honor.

21           THE COURT:  Thank you.  The Court will provide the

22   defendant a copy of the form entitled Notice of Right to

23   Appeal Sentence Under Limited Circumstances.

24           The government's position on bond?

25           MR. KEIM:  We'll defer to the Court, Your Honor.

─────────────────── United States v. Kuttke ───────────────────

42

1          THE COURT:  How long is his mother going to be in

2     town?

3          MS. RUPERT:  Yes, Your Honor.  I was going to ask

4     the Court for some additional time for Mr. Kuttke.  The family

5     is going to be in town until Easter.  So we'd ask the Court to

6     allow Mr. Kuttke at least until next Wednesday so he would

7     have an additional week with his family.

8          THE COURT:  Where is his passport?

9          MS. RUPERT:  The pretrial services has his passport.

10         THE COURT:  Do you concur?

11         MS. RUPERT:  He does not have the passport.  I'm not

12    sure if it's with the agent or with pretrial.

13         THE PROBATION OFFICER:  I'm sorry, Your Honor, I

14    don't actually have the order on me, but if it's been ordered

15    then, yes, we have it.

16         THE COURT:  Well, Ms. Rupert, as an officer of the

17    court I'm going to ask you to make sure that that happens that

18    we do have the passport.  And that he doesn't take advantage

19    of leaving the country inappropriately.

20         Mr. Kuttke, I'm going to give you the advantage of

21    being able to report the Wednesday after Easter.  Okay.

22    Easter is coming up.  Based upon my recollection, Easter is --

23         MS. RUPERT:  April 20th.

24         THE COURT:  -- April the 20th.  So I'm going to

25    allow you to report April the 23rd.  All right.  And that's

─────United States v. Kuttke─────

43

 1   not a recognition of your circumstances but rather a

 2   recognition of the steps that your mother and son have taken

 3   to be with you in your time of need.  So this is not so much

 4   for you, but it is for her.

 5           THE DEFENDANT:  Thank you.

 6           THE COURT:  All right.  Anything else we need to do?

 7           MS. RUPERT:  Should he report here, Your Honor, or

 8   is there another designated place?

 9           THE COURT:  I'm trying to figure out what's the best

10   place for him to report.  Sometimes they tell me that it's

11   best to report to the Alexandria Detention Center, no later

12   than 3 o'clock.  And other times they tell me to send him to

13   probation.  So wherever he's supposed to go, I'll let you take

14   care of that.

15           THE COURTROOM CLERK:  It's the marshal service

16   downstairs.

17           THE COURT:  All right.  They're telling me now it's

18   the marshal service downstairs.

19           MS. RUPERT:  Thank you, Your Honor.

20           THE COURT:  Again, it sort of switches, but,

21   Ms. Rupert, I'm going to take advantage of your good office to

22   make sure that he goes wherever he needs to go and he needs to

23   report there no later than 3 o'clock on that day.

24           MS. RUPERT:  Okay.  Yes, Your Honor.

25           We also have -- the Court referenced two orders.

──────────── United States v. Kuttke ────────────

44

1    I'd ask for a moment while Mr. Kuttke executes the restitution

2    order, which is currently for at least $18,500 with one of the

3    victim's amounts to be determined.  And then there's a consent

4    order of forfeiture that we will also execute that lists two

5    items.  I would want to note for the Court that one of the

6    items listed in the consent order for forfeiture, the

7    government has indicated a willingness to -- if they are

8    provided a hard drive, to download family pictures and

9    documents onto that hard drive for Mr. Kuttke so he has those

10   items.  I just want to note that for the Court.

11            THE COURT:  That's fine.  And I'm sure that if the

12   United States Attorney's Office has indicated that they have

13   no hesitancy to allow that, that it will happen.

14            MS. RUPERT:  Thank you, Your Honor.

15            THE COURT:  So you can go ahead and hand those up

16   and the Court will enter them.

17            MS. RUPERT:  Thank you, Your Honor.

18            THE COURT:  Thank you.

19            MR. KEIM:  Your Honor, we're not sure if the

20   government has actually signed the consent order yet.  We

21   would like to have that opportunity.

22            THE COURT:  Those orders are entered.

23            Ms. Rupert, I'm depending on you to make sure

24   Mr. Kuttke gets to where he needs to be on his surrender date.

25            MS. RUPERT:  Yes, Your Honor.

───United States v. Kuttke───

45

1        THE COURT:  All right.  Anything else we need to do?

2        MR. KEIM:  No, Your Honor.

3        THE COURT:  Okay.

4

5            **(Proceedings adjourned at 2:23 p.m.)**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for

4     the Eastern District of Virginia, do hereby certify that I

5     reported by machine shorthand, in my official capacity, the

6     proceedings had and testimony adduced upon the Sentencing

7     hearing in the case of the **UNITED STATES OF AMERICA versus**

8     **PETER M. KUTTKE**, Criminal Action No.: 1:24-cr-245, in said

9     court on the 9th day of April, 2025.

10         I further certify that the foregoing 46 pages

11    constitute the official transcript of said proceedings, as

12    taken from my machine shorthand notes, my computer realtime

13    display, together with the backup tape recording of said

14    proceedings to the best of my ability.

15         In witness whereof, I have hereto subscribed my

16    name, this July 31, 2025.

17

18

19

20

21    _____
                                    Tonia M. Harris, RPR
22                                  Official Court Reporter

23

24

25

                                                              46