UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | Criminal Action |
| | : | No. 1:24-cr-00245-RDA-1 |
| **v.** | : | |
| | : | Court of Appeals |
| **PETER MARKUS KUTTKE,** | : | No. 25-4297 |
| | : | |
| | : | November 14, 2024 |
| | : | 2:02 p.m. - 2:24 p.m. |
| **Defendant.** | : | |
| | : | |
| ............................ | : | |

**TRANSCRIPT OF CHANGE OF INITIAL APPEARANCE PROCEEDINGS**
**BEFORE THE HONORABLE LINDSEY R. VAALA,**
**UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**

APPEARANCES:

For the United States:
**Alessandra Serano, Assistant United States Attorney**
DEPARTMENT OF JUSTICE
UNITED STATES ATTORNEY'S OFFICE
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3768
Email: Alessandra.serano@usdoj.gov

For the Defendant:
**Whitney Minter, Assistant Federal Public Defender**
OFFICE OF THE FEDERAL PUBLIC DEFENDER (Alexandria)
1650 King Street
Suite 500
Alexandria, VA 22314
703-600-0800
Fax: 703-600-0880
Email:

APPEARANCES: (Cont.)

Court Reporter: **Scott L. Wallace, RDR, RMR, CRR**
Official Court Reporter
United States District Court
401 Courthouse Square
Alexandria, VA 22314-5798
Cell: 443-584-6558
Email: Scottwallace.edva@gmail.com

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

**AFTERNOON SESSION, NOVEMBER 14, 2024**

THE COURTROOM CLERK: This is the case of *United States of America versus Peter Kuttke*, Case Number 1:24-cr-245.

MS. SERANO: Good afternoon, Your Honor. Alessandra Serano on behalf of the United States.

THE COURT: Good afternoon.

MS. MINTER: Good afternoon. Ms. Minter on behalf of the United States.

THE COURT: Good afternoon, Ms. Minter. Good afternoon, sir. Okay. Is it Kutkey?

THE DEFENDANT: Kuttke.

THE COURT: Kuttke.

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. Good afternoon, sir. This is your initial appearance. You're in the United States District Court for the Eastern District of Virginia.

The initial appearance is your first court appearance on the charges, so what I'm going to do is tell you what you've been charged with, I'm going to ask the government to put the maximum possible penalties for the charge on the record, and then we're going to talk about some next steps, including counsel, and some additional hearings, okay?

So, you have been charged via an indictment with one count. That count is receipt of child pornography. The indictment alleges that on or about and between March 9th, 2014

and December 1st, 2023, in the Eastern District of Virginia, which is this district, you did knowingly receive and attempt to receive any visual depiction using a means and facility of interstate and foreign commerce in which visual depictions had been transported in and affecting interstate and foreign commerce by any means, including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depictions were of such conduct in violation of Title 18, U.S.C. Section 2252 (a)(2) and (b)(1).

There also is a forfeiture notice included in the indictment.

Ms. Minter, I should have asked you, do you have a copy of the indictment?

MS. MINTER: I do, Your Honor.

THE COURT: Okay. Government, for the record, place the penalties on the record, please.

MS. SERANO: Sure. The mandatory minimum is five years and possibly up to 20 years in prison; a minimum mandatory five years of supervised release and up to life; a maximum $250,000 fine; a $100 penalty assessment; and a $5,000 penalty assessment under the JDVA.

In addition to that, there is a maximum penalty of 20 -- of 25,000 under the NDE special assessment and mandatory restitution.

THE COURT: Okay. Thank you.

So, sir, a couple of things. Let me tell you first that you have the right not to make any statements in court today about the conduct and the charges against you, and any statement you do make could be used against you.

These are charges where it would be appropriate for you to be -- you're entitled to be represented by counsel. And if you cannot afford counsel, the Court can appoint counsel for you.

Ms. Minter, have you had and opportunity to speak with him?

MS. MINTER: I have spoken to him, Your Honor. I do believe he qualifies for court-appointed counsel. I believe he has begun filling out the financial information.

With the Court's indulgence, I think we can review it and pass it up in just a few moments.

THE COURT: Okay. Sure. Go ahead.

MS. MINTER: Thank you.

(Brief pause in proceedings.)

MS. MINTER: Thank you, Your Honor. Before it being passed up, I will tell the Court, just for the record, that Mr. Kuttke did his best to convey the information to me. A lot of this was presented in euros, because a lot of his salary and expenses are German-based.

So, Your Honor, I will present that with a caveat that some of those numbers have been calculated myself. That's our best guess at those numbers, but they fluctuate based on a number

of different things. I've also noted, Your Honor, there is a potential outstanding judgment for child support that would be very significant. I've noted it with an asterisk because that's apparently not yet finalized by the Court, but that's the number that he's expecting.

The Court can see from looking at that that there is a reasonably significant amount of income, but there are also some very complicated expenses as well. Given the nature of the charge, I think it might be appropriate to appoint our office at this time, and if he's able to retain counsel at a later point, he can do so.

THE COURT: And is the home that's listed as jointly owned on this form, is it here or in Germany?

MS. MINTER: It is in Germany, Your Honor, and so it --

THE COURT: Okay.

MS. MINTER: For various reasons, that is not an asset that he can count on.

THE COURT: Okay. All right.

MS. SERANO: May I speak?

THE COURT: Yes.

MS. SERANO: I don't know what the affidavit contains. It's my understanding he's suspended from his work. He's still getting paid from his employer. I would ask that any appointment of counsel be provisional under 3006-A.

THE COURT: Which says what?

MS. SERANO: Which basically says the Court can appoint professional counsel to be able to vet out whether the numbers justify whether he is entitled to appointed counsel, whether he's indigent or not, and essentially require any attorney the Court appoints to keep track of their hours because he may have to repay the CJA for any funds expended, if he doesn't qualify.

THE COURT: Okay. All right. Well, based on this form and then with the caveat and the information, additional information provided by Ms. Minter, I find that, based on this, he likely qualifies for court-appointed counsel.

Mr. Kuttke, would you like the Court to appoint counsel for you, sir?

THE DEFENDANT: Um -- yes.

THE COURT: Okay. All right. I will do that, but I will advise you that, if it is determined at a later point that you are capable of paying some or all of the representation, it is possible that you will be ordered to repay the cost of your representation. But for now, based on this, I find that court-appointed counsel is appropriate.

Do you want to say something, Ms. Minter?

MS. MINTER: If I could, Your Honor. Our position would be that, at least in the interim, any work that is done on Mr. Kuttke's behalf should be governed by this Court's order appointing counsel. Of course, if there were any fraudulent misrepresentations or the like, that would be a different story.

But, if the Court has reviewed his correctly submitted expenses and determined that he qualifies for court-appointed counsel, at least at this stage, we would submit that that should not be a period of expense that he would be required to pay back.

THE COURT: You mean -- so clarify. You don't want him to have to -- I don't understand exactly what you're saying.

MS. MINTER: In other words, Your Honor, if he has been forthright with his expenses and his debts, and the Court has determined that he qualifies for court-appointed counsel, we would submit that that should be the end of the analysis for this point in time, unless there is information that was not put forth to the Court or the Court's decision was based on something inaccurate, in which case I think it could be reassessed. But I don't think he should be in the position of constantly wondering whether he's going to be required to pay that back.

Certainly, the Court can set the matter for a status, and we can revisit it, but, in the interim, if the Court appointed us as counsel, we would submit that that's appropriate.

MS. SERANO: The only concern I have with that, Your Honor -- obviously, I want the defendant to have counsel, and I don't have the numbers, but, as counsel just said, if there's an outstanding child support, that we just don't have that number, and that that may impact his ability whether he qualifies or not.

And so I just want to have that flexibility that, if he is making a salary, even though he's not working, the government --

the German government or his employer is still paying him -- again, I don't know what those wages are -- that we would have the ability to replenish the public coffer for funds that are paid, if he doesn't qualify.

THE COURT: I understand what you're saying, but based on the numbers I'm seeing here, I think, between the salary he does make, also the debts, that the court-appointed counsel is appropriate in this case.

So -- also considering the charges. So I will appoint the counsel from the Public Defender to represent Mr. Kuttke.

Okay. Is the government seeking detention?

MS. SERANO: We are not, Your Honor, and I'm happy to provide a basis as to why we're not.

THE COURT: Okay.

MS. SERANO: In this case, the search warrant was done December 1st, 2023, so the case is dated. Given the fact that this defendant has a very sophisticated computer system, it took us a while to get into it, and, given the fact that he does remain -- I do have his passport. In fact, I have a copy of his passport, and he has not -- he had an attorney, a retained attorney that maintained contact with me. And so, given all that, we didn't believe he's a flight risk.

And, of course, the Court is going to impose conditions of release related to the Adam Walsh Act, so he shouldn't have access to computers to hopefully not do this again.

THE COURT: Okay. Have you had an opportunity to see a copy of the pretrial report?

MS. SERANO: I have not.

THE COURT: Okay. Have you seen it, Ms. Minter?

MS. MINTER: I have not.

THE COURT: Okay. I don't know if we have -- I only have the one copy, but -- you have your copy? Okay. I've written on mine, but I can always pass one up that you can both look at.

Is there another one? Okay. Thank you.

(Brief pause in proceedings.)

THE COURT: I raise it because I -- I don't -- I don't know whether I want to qualify them as concerns, but Pretrial Services obtained information from Mr. Kuttke but was unable to verify it, I think in part based on the timing.

So, I don't have a recommendation, necessarily, from Pretrial Services, in part -- I think in large part because the information is unverified. I don't have -- see anything in here that gives me pause, other than that he lives alone, and I don't -- there's no third-party custodian that's been proposed. But I don't know if the government even feels like a third-party custodian would be necessary. Obviously, it's my decision at the end of the day, but I don't even know if the government has a position on that.

MS. SERANO: I believe that a third-party custodian would be appropriate, but again, given the fact that he had an attorney

and I was -- today I was told, at the time of his self-surrender, that that retained attorney was no longer going to represent him. Had I known that that attorney was going to withdraw and that he would be seeking counsel, perhaps I would be in a different situation here.

So, I'm not asking for detention, just given all of the factors in this case, but I would request -- and I have no problem if the Court is so inclined to have him released with the idea that he come up with a third-party custodian or something else that would ensure that he makes all of his court appearances and doesn't re-offend.

THE COURT: Okay. Ms. Minter.

MS. MINTER: Your Honor, if I may. My understanding is that his prior attorney was retained based on a limited period of time and funding, specifically through the course of the investigation, which, of course, concluded with Mr. Kutkke's self-surrender this afternoon or this morning.

And to be clear, Your Honor, this case has been pending for nearly a year. My understanding is that a search warrant was executed on December 1st of last year. So, it's not just that this was going on behind the scenes or something of the like. He has been aware of an active investigation for over a year and hasn't attempted to flee or otherwise commit other criminal activity. And so I would submit that a third-party custodian really is not necessary in this instance. Of course, if the

Court wanted to revisit it, the Court could impose temporary conditions of release that did not include a third-party custodian. We could certainly work with him to get that contact information and provide it to the Court, if the Court wanted to revisit it, but, given the history of the case, Your Honor, and his conduct in light of the fact that he knew he was the subject of an investigation and that he did the right thing by retaining counsel to assist with the investigation and by self-surrendering when it was necessary nearly a full year later, we would submit that a third-party custodian is not necessary at this time.

THE COURT: Okay. Ms. Serano, do you have any response? I mean, I --

MS. SERANO: I don't disagree with anything factually that defense counsel has said. Again, this is a very serious case. I thought his -- I, obviously, didn't know the scope of the representation of the prior attorney, and literally I got a phone call this morning when the defendant self-surrendered saying that that attorney was withdrawing.

THE COURT: So, the indictment charges on or about March 2014 to December 2023, so a nine-year period. So what -- it's only received. So what generally are the circumstances here?

MS. SERANO: Sure. The defendant was operating on a darknet file-sharing program called bittorrent where he's basically distributing and sharing and downloading thousands of child pornography images. And the date -- the earliest date is

the date of the install of his computer, so that was the first date that the computer, like, turned on. And so we have files dating back several years up until the date of the search warrant. Because there are so many of them, I just did one count to capture all of the conduct.

THE COURT: Okay. All right. I think, based on the charge, the receipt, one charge of receipt or one count of receipt, and the fact that Mr. Kuttke has been under investigation, known he's under investigation, and hasn't gone anywhere and self-surrendered, I am comfortable releasing him, despite the fact that I don't have a third-party custodian.

So, I want to talk about conditions of release. There are some proposed -- I'm sorry. I don't -- they're not proposed in the Pretrial Services report, but I do have some I would like to discuss.

That said, if a third-party custodian becomes, in the government's view, necessary, the government can always file a motion and ask for reconsideration. But, based on the factors tendered to me, I'm comfortable releasing him.

So, here's what I propose, and I'm happy to hear from both sides.

So, the conditions of release would be report to Pretrial Services as directed; live at his current address, which is listed on the Pretrial Services report; and not move without prior approval of Pretrial Services or the Court; surrender his

passport, which I understand from the government he already has, and not obtain any additional travel documents; refrain from having any contact with minors under the age of 18, unless another adult is present who has been approved in advance by Pretrial Services; refrain from possessing or having access to a computer or the Internet, unless a computer monitoring program has been installed by Pretrial Services.

The defendant shall consent to the installation of computer monitoring software on any computer to which he has access. Installation shall be performed by Pretrial Services. The software may restrict and record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, e-mail correspondence, and chat conversations. He shall not remove, tamper with, reverse engineer, or in any way circumvent the software, and the cost of monitoring will be paid by the defendant.

He must refrain from possessing or utilizing any video gaming system and console, phone and Internet capabilities, or any such devices that would enable contact and/or sharing of individuals known or unknown to him.

And he must submit to and pay for a sex offender evaluation and/or treatment conducted by a certified sex offender treatment provider, as directed by the supervising Pretrial Services officer, and also sign all appropriate release forms.

He must also submit to mental health evaluation and

treatment as deemed necessary by Pretrial Services.

And then, additionally, according to the Adam Walsh Act, he must refrain from possessing or having access to any firearms, destructive devices, or other dangerous weapons as instructed by Pretrial Services.

He must submit to home detention to be monitored by active GPS at his expense and as directed by the supervising officer, and must abide by all technology requirements.

And he shall be restricted to his residence at all times, except for employment, education, religious services, treatment, attorney visits, court appearances, court-ordered obligations, or other activity as pre-approved by the supervising officer.

I'm going to require that he be detained until the conditions can be met, which is essentially to make sure that there's GPS monitor equipment available that can be installed. So, until that's available -- I think there's one today, but until that's installed, he would need to be detained. So I will check that box on the form.

Does the government have any reactions to the conditions or any other items you would like to request? I understand you have his passport, correct?

UNIDENTIFIABLE SPEAKER: I do have it, and I'm prepared to turn it over to Pretrial Services here.

THE COURT: Okay. Mario, do you want it? Okay. All right. Any other --

MS. SERANO: No, ma'am.

THE COURT: Ms. Minter.

MS. MINTER: Your Honor, the only things I would request are, with respect to contact with minors, I don't know if the Court meant that to be exclusively physical conduct, or if the Court is including phone or other contact. He does have two minor children. They live in Germany, Your Honor. He will not be having any physical contact with them, but if he could be allowed to communicate with them by phone.

THE COURT: He may have telephone communication contact with his two minor children who, I believe, are 15 and 16, according to the report.

MS. MINTER: Correct, Your Honor.

THE COURT: Okay. But that's a caveat for only those two by phone.

MS. MINTER: Thank you, Your Honor. His other children are adults.

THE COURT: Adults.

MS. MINTER: And, Your Honor, if the Court would consider, perhaps, ordering his release today, and then allowing him to appear tomorrow at 9. I just worry about the logistics of being able to get him processed out and get electronic monitoring accomplished all by the end of the day today.

THE COURT: I'm going to deny that one. The conditions need to be met before he can be released. Hopefully, they can do

it this afternoon, but I can't control it.

MS. MINTER: Understood.

THE COURT: Okay. All right. So, Mr. Kuttke, I'm going to release you on the conditions that I just stated. Did you hear them, and do you have any questions about them?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. No questions. All right. If you are alleged to have violated any of these conditions, you'll be back in front of me or possibly Judge Alston when you talk about that for, you know, looking at potential revocation of your conditions of release, okay? All right.

I need to give a Due Process Protection Act reminder, but we also need to talk about an arraignment date. Judge Alston has given me two dates for the arraignment in this case, either next Wednesday, November 20th, or Thursday, the 21st, both at 11 a.m.

MS. MINTER: Next Wednesday, Your Honor.

THE COURT: So I'll set the arraignment before Judge Alston on November 20th at 11 a.m.

Sir, Judge Alston will be your trial judge, so he will have your case going forward, okay? All right.

My last thing, I think, unless counsel tells me otherwise, is to give the Due Process Protections Act reminder.

You can have a seat, sir. This is a reminder to the government about its disclosure obligations in your case. Pursuant to Federal Rule of Criminal Procedure 5F and the Due

Process Protections Act, the Court orders the United States to adhere to the disclosure obligations set forth in *Brady versus Maryland* and its progeny.

*Brady versus Maryland* instructs that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

Failure to adhere to this requirement may result in serious consequences, up to and including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the Court.

And I have signed a written order that will go on the docket as well.

All right. So, you all will be with Judge Alston on November 20th at 11 a.m. for the arraignment in this case.

Ms. Serano, is there anything else from the government?

MS. SERANO: No, ma'am.

THE COURT: All right. Ms. Minter.

MS. MINTER: Not at this time, Your Honor.

THE COURT: Okay.

(Proceedings adjourned at 2:24 p.m.)

**C E R T I F I C A T E**

I, Scott L. Wallace, RDR-CRR, certify that the foregoing transcript of proceedings was prepared from an FTR Gold audio recording of proceedings in the above-entitled matter and was produced to the best of my ability. Indiscernible indications in the transcript indicate that the audio captured was not clear enough to attest to its accuracy.

| | |
|---|---|
| /s/ Scott L. Wallace | 5/20/26 |
| ----------------------------- | ---------------- |
| **Scott L. Wallace, RDR, CRR**<br>**Official Court Reporter** | **Date** |